**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

|                                    |   |                                          |
|------------------------------------|---|------------------------------------------|
| IN RE:                             | § | CHAPTER 15                               |
|                                    | § |                                          |
| THINK3 INC.,                       | § | CASE NO. 11-[*to be assigned by the*     |
|                                    | § | *U.S. Bankruptcy Court*]                 |
| DEBTOR IN A FOREIGN PROCEEDING     | § |                                          |
|                                    | § |                                          |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN
MAIN PROCEEDING AND REQUEST FOR CHAPTER 15 RELIEF**

Dr. Andrea Ferri, in his capacity as Trustee and putative foreign representative (the "Foreign Representative") of the above-captioned debtor ("Think3" and the "Foreign Debtor"), whose involuntary judicial proceedings under the laws of Italy currently are pending before the Court of Bologna, Italy (Case No. 69/11) (the "Italian Court" and "Italian Proceeding"), through his undersigned counsel, respectfully submits this verified petition (the "Petition"): (i) for recognition by this Court as the "foreign representative" of Think3 (as that phrase is defined in section 101(24) of the title 11, United States Code §§ 101 *et seq.* (the "Bankruptcy Code")), and (ii) for recognition of the Italian Proceeding as foreign "main" proceeding pursuant to Bankruptcy Code §§ 1515, 1517 and 1520. In further support of the Petition, the Foreign Representative has filed contemporaneously herewith his Declaration as Foreign Representative (the "Foreign Representative Declaration" or "Ferri Declaration"), as well as the Declaration of Edgardo Ricciardiello, Italian counsel to the Trustee (the "Italian Counsel Declaration" or "Ricciardiello Declaration"), both of which are incorporated herein by reference.

**Preliminary Statement**

1.      Think3 is a Delaware corporation.  It is a debtor before the Court in pending Chapter 11 Case number 11-11252, which was commenced on May 18, 2011 (the "Chapter 11 Case").

2.      Think3 is also a debtor in insolvency proceedings pending before the Italian Court. Those proceedings were commenced two months prior to the commencement of the Chapter 11 Case now pending in this Court.  Specifically, on March 14, 2011, creditors in Italy commenced involuntary insolvency proceedings against Think3 and also against its Italian subsidiary, Think3 SRL.  By declaration of bankruptcy entered by the Italian Court on April 14, 2011, I was appointed Trustee in the Italian Proceeding of Think3.  A separate Trustee, Dr. Massimiliano Magagnoli, has been appointed to administer and oversee the Italian insolvency proceedings of Think3 SRL.

3.      As Trustee in the Italian Proceedings, I am required to take possession and control over all of Think3's business and assets.  Think3's representatives in the United States have been aware of the pendency of the Italian insolvency proceedings from the day they were commenced. As Trustee in the Italian Proceedings, I have had contact with Ms. Rebecca Roof, who previously sought and obtained authorization from this Court to act on behalf of Think3 in the Chapter 11 Case.[1]  Although it was able to do so, Think3 did not dispute or challenge the commencement of the Italian Insolvency proceedings brought against it by its creditors, nor did Think3 challenge the jurisdiction of the Italian Court, or seek dismissal of the involuntary proceedings brought against it.  Nor did any other creditor or interested party challenge the filing or jurisdiction in Italy.

---

[1] Please note, however, that Ms. Roof did not consult with me either before commencing the Chapter 11 Case or before seeking the Court's authorization for her to act on behalf of Think3.

DM2\2927353.3 99999/99999

4.     As Trustee of Think3 in the Italian Proceedings, I am obligated to marshal assets, investigate claims and either liquidate or, if appropriate, reorganize or rehabilitate, Think3 and its business. I have been fully engaged and have been discharging my duties since my appointment in April. Today, Think3 has business operations in Italy and is making substantial progress towards a possible reorganization or sale for the benefit of creditors. Think3 is generating revenue from its operations in Italy, and has maintained its customer relationships and commercial agreements where appropriate. Those revenues are utilized to fund Think3's business operations, subject to my control and oversight by the Italian Court. The revenues generated in Italy have been sufficient to fund operations and professional expenses in Italy, without the need for loans. In fact, through the Trustee, Think3 continues to enter into new contracts and research and development engagements with new and existing clients, generating significant revenues.

5.     I have been authorized in the Italian Proceeding to seek relief under Chapter 15 in this Court as Think3's "foreign representative," as that phrase is defined in the Bankruptcy Code.

6.     Up to this point, the relationship among some of the interested parties has only at times been cooperative, and has otherwise been contentious. In my view, much if not all of the acrimony arises out of the fact that Think3, Versata and even Think3's "DIP Lender" in the Chapter 11 Case before this Court, share common ownership; relationships which do not affect my judgment as Trustee, but which I believe may have played a role in at least some of the decision-making process and strategy being implemented by others. This dynamic has generated nearly $500,000 in professional fees in the Chapter 11 Case in just a very short time.

7.     The difficulty created by that dynamic is evident in the sale motion recently filed in the Chapter 11 Case. In my view, the effort to accomplish an "assumption" and sale of Think3's intellectual property through Think3's Chapter 11 Case, makes little economic sense

DM2\2927353.3 99999/99999

and is contrary to rulings of the Italian Court to which both Think3 and Versata FZ-LLC are parties. In the Italian Proceedings, Think3 just recently *terminated* all of Versata's contract rights that the motion to assume presumes are valid and enforceable. That ruling was entered by the Italian Court and has been upheld on subsequent appeal by Versata – *twice*. By terminating that contract in accordance with the Italian Bankruptcy Laws, Think3 has recovered a significant asset from which to fuel creditor recoveries. Indeed, Think3's recovery of that asset is a significant victory, and presents what I believe is its best opportunity for Think3 to achieve a viable restructuring and provide a continuing source of jobs to its Italy-based workforce. The termination of that contract and recovery of that asset should not be ignored, and that asset should not be simply given back to Versata for insignificant consideration.

8. But perhaps even more troubling is that even if the proposed "assumption" and sale are blocked, an effort has been made in the Chapter 11 Case to ensure that the eventual return of Think3's intellectual property to Versata is an all-but-forgone conclusion: Think3's U.S.-based representatives have taken out loans to fund professional fees, and have granted to an entity related to Versata a series of lien rights against the very intellectual property that Think3 has just recovered. Then, in what appears to me to be a clear indication of the intent of Versata and its web of related entities, Think3's Chapter 11 lender required as a condition of that loan a provision that if I, as Foreign Representative and Trustee, commence valid and proper Chapter 15 proceedings in this Court – *seeking statutory protections to which I am entitled as Foreign Representative* – it will constitute an event of default on the loans used to fuel professional fees. Through this strategy, either (i) Versata hopes to get Think3's most valuable asset for next-to-nothing through an assumption and/or sale, or (ii) by virtue of my mere appearance, Versata's

affiliated entity hopes to foreclose on the intellectual property that was just recovered for the benefit of Think3's estate.

9.     Bearing in mind that the overriding goal of both the Italian and U.S.-based insolvency laws is the maximization of value for the benefit of creditors, I believe that the commencement of these Chapter 15 proceedings is an important first step towards normalizing and harmonizing a process and framework designed to achieve the purposes of the laws of both the United States and Italy.

10.     Accordingly, through this Petition, as putative Foreign Representative I respectfully request that the Court: (i) recognize and confirm my appointment to act as Think3's "foreign representative" within the meaning of section 101(24) of the Bankruptcy Code, and (ii) grant "recognition" of the Italian Proceeding as a "foreign main proceeding" within the meaning of section 101(23) of the Bankruptcy Code.

## Jurisdiction

11.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a). 157(a).  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

12.     This case has been properly commenced pursuant to section 1504 of the Bankruptcy Code by the filing of a petition for recognition of the Italian Proceeding in accordance with section 1515 of the Bankruptcy Code by Think3's duly appointed foreign representative.

13.     In light of Think3's pending Chapter 11 Case (Case No. 11-4252), venue is proper in this District pursuant to 28 U.S.C. § 1410(3).

14.     The statutory bases for relief are sections 1501, 1504, 1515 and 1517 of the Bankruptcy Code.

DM2\2927353.3 99999/99999

**Background**

I.      **The Foreign Debtor's Business**

15.     Cad Lab SRL ("CAD Lab") was founded on March 28, 1979, in Italy.  After operating as CAD Lab for more than twenty (20) years, it was party to a reverse merger with an American company, thus becoming Think3 Inc. on December 28, 2000.  Think3 and its debtor and non-debtor subsidiaries operate a computer-aided design software business.

16.     Think3 has a business office address in Austin, Texas.  Ms. Rebecca Roof of AP Services, LLC, has been appointed in Think3's Chapter 11 Case to act as Think3's President, Secretary and Chief Restructuring Officer.  The order granting Ms. Roof such status was entered on May 25, 2011 [Docket No. 35].  I have been advised that Ms. Roof maintains an office at Think3's Austin, Texas location.  Other than Ms. Roof (and perhaps a few other restructuring professionals at her firm), Think3 has no employees in the United States.

17.     As compared with a minimal administrative presence in the United States, Think3 has substantial business operations in Italy.  This is consistent with the fact that, as is noted above, CAD Lab operated as an Italian company for more than twenty (20) years before becoming Think3 Inc. through a reverse merger.  The headquarters of CAD Lab were maintained in Italy along with the company's research and development team, which has been and continues to be made up of individuals residing in Italy.  After the reverse merger, this did not change, nor did the fact that the majority of Think3's revenue came from Italy.   Moreover, the "source code" for Think3's intellectual property that continues to be the subject of much controversy both in the Chapter 11 Case and in the Italian Proceedings, has been and continues to be located in Italy.

18.     Case filings in Think3's Chapter 11 Case confirm these facts.  As can be seen from a review of Schedule E (Creditors Holding Unsecured Priority Claims) recently filed in Think3's

DM2\2927353.3 99999/99999

Chapter 11 Case, Think3 has a considerable number of employees in Italy.[2]  *See* Docket No. 84, Case No. 11-11252.  Indeed, of the fifty-seven (57) priority level creditors listed on Schedule E, fifty-four (54) of them are individuals residing in Italy.  Other than those fifty-four (54) individuals, the remaining three (3) claims noted are by the Illinois Department of Employment Security (two (2) claims) and the Internal Revenue Service.  No priority claims are listed for individuals residing in the United States.  This is consistent with the fact that Think3's business operations are centered in Italy (and is *in*consistent with statements contained in filings made in the Chapter 11 Case, stating that Think3's business in Italy was conducted *only* through Think3 SRL, *see*, *e.g.*, Affidavit and Statement of Andrew Price, Docket No. 9 at ¶ 10 (Case No. 11-11252)).

19.     Also consistent with the fact that Think3's employees and business operations are located and have been conducted in Italy is the fact that the overwhelming majority of creditors listed on Schedule F filed in Think3's Chapter 11 Case are located in Italy.  *See* Docket No. 84, Case No. 11-11252.  Out of the two hundred thirty-nine (239) creditors listed on the twenty-five pages that comprise Schedule F, two hundred seven (207) of them are located in Italy (or were listed without address, but it is reasonable to infer from the information given that it is a creditor located in Italy).  As compared with the two hundred seven (207) creditors located in Italy, only a combined total of thirty-two (32) creditors are located outside of Italy (and even then, five (5) of those are related entities or affiliates/subsidiaries of Think3), and of those thirty-two (32), only nine (9) are located in the United States.  *Just 3% of the creditors listed on Schedule E are located in the United States.*

---

[2] The individuals noted in Schedule E are Think3's employees in Italy.

DM2\2927353.3 99999/99999

20.     Think3's Schedule F identifies $45,429,381.50 in unsecured, non-priority claims for the two hundred thirty-nine (239) creditors listed.  See Docket No. 84, Case No. 11-11252.  Of that amount, only $19,159,462.09 relates to creditors located outside of Italy, but even that does not present a clear picture of Think3's creditor base because $17,542,680.00 of the amount scheduled is for claims of Think3's subsidiaries or related entities.   As compared with $45,429,381.50 in claims, only $1,616,782.09 is owed to non-Italian, non-affiliated creditors.  Out of that $1,616,782.09 amount, just $371,884.76 is owed to United States-based creditors according to Schedule F.  *United States-based creditors hold just 0.8% of the debt listed on Schedule F.*

21.     After ten (10) years of business operations, Think3 was purchased by ESW Capital of Austin, Texas, on September 27, 2010 – just ten (10) months ago.  After the sale closed, Think3's operations in Italy did not change.  Ten (10) days after the sale closed, on October 7, 2010, Think3 entered into a Technology License Agreement (relating to intellectual property that is clearly one of Think3's most valuable assets) with Versata FZ-LLC, another entity in Think3's family tree (but located in Dubai) – *Think3*, *Versata FZ-LLC* and Think3's "DIP Lender," *Gensym Cayman L.P.*, all are ultimately owned by an individual, Joe Liemandt, as is noted in footnotes in filings by Think3 in its Chapter 11 Case.

22.     Background facts and other matters noted in the Chapter 11 Case confirm that Italy is where Think3's business operations are centered.  For example, Think3 emphasizes that, as part of the Technology License Agreement transaction, an independent third party was engaged to evaluate the fairness of the consideration given for the transfer of intellectual property rights to Versata.[3]  See Docket No. 81 (Sale and Compromise Motion) at ¶ 7, Case No. 11-11252.  Viewed

_____

[3] As Trustee, I have reviewed the "fairness of consideration" analysis relating to the October 10, 2010 transaction and do not accept its conclusion.  The value provided to Think3 through the Contract was approximately *one-third*

alongside the contentions made by Think3 in its Chapter 11 Case, it is curious to note that both the firm and individual engaged to undertake that analysis were based in Italy, not the United States. At the same time, however, viewed alongside the realities of Think3's business operations, that choice made perfectly good sense: Think3's business operations and assets – including the intellectual property Versata seeks to acquire and the underlying "source code" relating to that intellectual property – are located in Italy, where it has a substantial business presence.

23. In fact, although the company established a legal address in Delaware, the reality of the matter is that this contact amounts to a post office box number and little more. In the last few years there has only been one employee of Think3 in the United States for sales support, while the other employees of Think3 resided in Italy and have been employed at Think3's offices in Italy, located at Casalecchio di Reno, Via Camillo Ronzani n. 7/29. Another demonstration of the Italian-based center of Think3's business is the fact that Think3 has several offices across Italy, all employing Italian personnel.

---

(1/3) of the value of rights given to Versata. Even then, it appears that Versata paid only ten percent (10%) or $300,000 to Think3, and it further appears that Versata may have distributed the remainder of funds (or a portion thereof) to Think3 SRL. Questions regarding these transfers remain unanswered, and are being investigated.

24.     Finally, confirmation that Italy is the center of Think3's business is found in Think3's revenue streams.   Think3's revenue for 2010 amounted to Euro 9,435,520. Approximately sixty-eight percent (68%) of those revenues originate in Italy.  The remainder of Europe and Asia make up another thirty-one percent (31%) of Think3's revenues.  Thus, revenues from the "rest of the world," *including* the United States, in total generate *just one percent (1%)* of Think3's revenues**.**



## II.     The Italian Proceedings

25.     On March 14, 2011, just five (5) months after Think3 and Versata entered into the Technology License Agreement (the "Contract") in a related-parties transaction, creditors of Think3 initiated the Italian Proceeding pursuant to the provisions of the Italian Bankruptcy Law by submitting to the Italian Court an involuntary petition against Think3.  On April 14, 2011, I was appointed Trustee in Think3's Italian Proceeding by entry of the declaration of bankruptcy in the Italian Proceedings.

26.     The importance of Think3's intellectual property is readily apparent.  Indeed, filings made in Think3's Chapter 11 Case confirm that Think3's intellectual property is its primary asset.

27.     The Italian Bankruptcy Laws permit a debtor or, in this case, Trustee, to terminate contracts that are not yet fully performed.  After reviewing what appears to have been an insider-negotiated and, at the very least a related-party transaction, I determined that the Contract was subject to challenge under the Italian Bankruptcy Law, and could be terminated in the Italian Proceeding.  Accordingly, I sought and obtained the approval and consent to do so from the creditors committee in the Italian Proceedings.  The creditors committee agreed, and as Trustee I proceeded and obtained an order from the Italian Court terminating the Contract.

28.     Versata and Think3's representatives were on notice of my efforts in the Italian Court to terminate that Contract.  In fact, Versata appeared in the Italian Court and challenged whether the Contract could be terminated.  Versata submitted legal briefs through Italian counsel.  Versata asserted matters of U.S. law in the Italian Court, and those matters were analyzed by the Italian Court.  The Italian Court held a hearing on my request to terminate the Contract, and Versata was present at that hearing and presented argument to the Italian Court.  Versata presented witnesses and evidence at that hearing, and was not limited in any way with respect to its ability to defend its position.  As part of its defense, Versata briefed and argued matters of U.S. law, and presented to the Italian Court legal opinions on U.S. law.

29.     After a hearing, the Italian Court determined that under the Italian Bankruptcy Law, the Contract was subject to termination.  That ruling was dated May 2, 2011.  A copy of the May 2, 2011 ruling from the Italian Court, in both Italian and English language, is attached to the Ferri Declaration as Exhibits C and D, respectively.

30.     Thereafter, Versata appealed the ruling of the Italian Court.  The appellate court considered Versata's arguments based on both the Italian Bankruptcy Law and on U.S. law.  After consideration, Versata's arguments were rejected by the appellate court.  The ruling of the appellate court is dated June 28, 2011.  Copies of the June 28, 2011 ruling of the appellate court, in both Italian and English language, are attached to the Ferri Declaration as Exhibits E and F, respectively.

31.     Versata then lodged yet another, second appeal.  That appeal was decided on July 20, 2011.  Again, the ruling of the Italian Court was upheld, and the termination of the Contract remains effective and valid.  Copies of the July 20, 2011 ruling of the appellate court, in both English and Italian language, are attached to the Ferri Declaration as Exhibits G and H, respectively.

32.     Not once has Versata challenged the jurisdiction of the Italian Court over Think3's Italian Proceeding.  Nor has Versata sought or obtained a stay pending appeal of the order from the Italian Court permitting termination of the Contract, despite the availability of such relief.  Moreover, due to Versata's continued efforts to take property over which the Italian Court has jurisdiction, the Italian Court issued an injunction against Versata on July 25, 2011.  Copies of the July 25, 2011 ruling, in both English and Italian language, are attached to the Ferri Declaration as Exhibits I and J, respectively.

33.     During the period of time in which litigation with Versata has taken place, I have retained U.S. counsel, and my U.S. counsel has made contact with the attorneys hired by Ms. Roof to represent Think3 in its Chapter 11 Case.  Although my U.S. counsel had hoped that they could agree with Ms. Roof and her team on a framework for moving forward on a cooperative basis now that Think3 has terminated the Contract, a motion was recently filed in Think3's

Chapter 11 Case seeking to "assume" the Contract and to sell Think3's intellectual property to Versata. My U.S. counsel was not advised of the filing in advance.

34. Finally, it must be noted that Versata's actions in the United States – commencing a lawsuit against Think3 on May 16, 2011 – violates a basic protection put in place for debtors through the Italian Bankruptcy Laws – *a stay against the commencement of actions against the debtor*. It is reasonable and fair to infer that Versata's actions in violating that stay have been willful and deliberate. These are matters into which I will inquire, and for which I may need the assistance of this Court.

35. It is because of these developments that I have commenced this Chapter 15 proceeding. Please note that I may soon seek additional relief with respect to the motion to "assume" and sell assets, and will confer with Think3's U.S. counsel before doing so with the hope of reaching agreement on fundamental terms for the manner of proceeding.

## Relief Requested

36. For the reasons set forth herein, the Foreign Representative respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit A: (i) recognizing the Italian Proceeding as "a foreign main proceeding" pursuant to 11 U.S.C. §§ 1517(a) and (b)(1) and providing the protections and benefits identified in Bankruptcy Code Section 1521; and (ii) recognizing the Foreign Representative as the duly appointed "foreign representative," as defined in 11 U.S.C. § 101(24), of Think3.

## Grounds For Relief Requested

37. Chapter 15 of the Bankruptcy Code is designed to assist foreign representatives and to coordinate concurrent proceedings taking place in different countries, where appropriate. *See generally* 11 U.S.C. §§ 1501 *et seq.* Among the purposes of Chapter 15 are: (i) to encourage cooperation between U.S. and foreign courts; (ii) to promote the fair and efficient administration

of cross-border insolvencies that protect creditors, debtors, and other parties-in-interest; and (iii) to protect and maximize the value of the debtor's assets. Consistent with those principles, the Foreign Representative commenced this Chapter 15 proceeding to obtain recognition of the Italian Proceeding as a foreign "main" proceeding. The Foreign Representative believes that this Chapter 15 proceeding will complement Foreign Debtors' primary proceedings in Italy to ensure the effective and economic administration of Think3's restructuring efforts and the maximization of value for the benefit of Think3's creditors.

## I.     The Requirements For Recognition As A Foreign Main Proceeding Are Satisfied

38.    Section 1517(a) of the Bankruptcy Code provides that a bankruptcy court shall enter an order granting recognition of a foreign proceeding if:

> (i)    such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign nonmain proceeding within the meaning of section 1502;
>
> (ii)   the foreign representative applying for recognition is a person or body; and
>
> (iii)  the Petition meets the requirements of section 1515.

11 U.S.C. § 1517(a). Section 1517(b), in turn, provides that a foreign proceeding "shall be recognized . . . (1) as a foreign main proceeding if it is pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1517(b)(1). The Foreign Representative submits that all of the requirements for recognition of a foreign main proceeding are satisfied.

### i.     *The Italian Proceeding is a "Foreign Proceeding"*

39.    As a threshold matter, the Italian Proceeding is a "foreign proceeding" as that term is defined in the Bankruptcy Code. Section 101(23) of the Bankruptcy Code defines a "foreign proceeding" as:

14

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23); *see also* 2 Alan N. Resnick and Henry J. Sommer, COLLIER ON BANKRUPTCY (16th ed. 2011) ¶ 101-23 (noting that courts give the phrase a broad construction).

40.     The Italian Proceeding meets this definition because it is a collective administrative proceeding under the Italian Bankruptcy Law, administered in the Italian Court, that relates to insolvency and adjustment of debt. *See* Ricciardiello Declaration at ¶¶ 13, 14, 17, 18. The purpose of the Italian Proceeding is to allow the Trustee to marshal Think3's assets and to allow time to either craft and execute a plan of reorganization or go through an orderly liquidation of assets. *See* Ricciardiello Declaration at ¶¶ 16, 17, 22, 23. The process is controlled by the Italian Court, which had authority at the outset to grant or deny the Italian petition (commencing the Italian Proceedings), can at any time dismiss the Italian Proceeding if the proper showing is made, and has review and approval rights over any plan of reorganization filed by the debtor. *See* Ricciardiello Declaration at ¶¶ 13, 18.

41.     Under the Italian Bankruptcy Law, the Foreign Representative, as Trustee, is in control of Think3's business and operations, and also oversees the process of forming the plan of reorganization. *See* Ricciardiello Declaration at ¶ 23. The Trustee and his actions are subject to oversight by the Italian Court, through which he obtained his appointment as Trustee. *See* Ricciardiello Declaration at ¶¶ 18, 22, 23. The Italian Court is a judicial authority that is competent to oversee the Italian Proceeding, as is required by 11 U.S.C. § 1502(3). *See* Ricciardiello Declaration at ¶ 13. For these reasons, Think3's assets are and will continue to be "subject to control or supervision by a foreign court" through the Italian Proceeding, and all of the requirements of section 101(23) are met.

## ii.     *The Italian Proceeding Qualifies as a Foreign "Main" Proceeding*

42.     Once it is determined that the Italian Proceeding is a "foreign proceeding," the question becomes whether the foreign proceeding is entitled to recognition, and if so, whether as a foreign "main" or "nonmain" proceeding.   Section 1502(5) defines a foreign "nonmain" proceeding as one which is pending in a country where the debtor has an "establishment," which in turn is defined in Section 1502(2) as "any place of operations where the debtor carries out a nontransitory economic activity."   *See* 11 U.S.C. §§ 1502(2), (5).   Section 1502(4), in turn, defines a foreign "main" proceeding as "a foreign proceeding pending in the country where the debtor has the center of its main interests."  11 U.S.C. § 1502(4).   Thus, it must be shown that the Italian Proceeding is pending where the "center of Think3's main interests" are located in order for the Italian Proceeding to be considered a foreign "main" proceeding.

43.     Although the Bankruptcy Code does not provide a conclusive test to determine what constitutes a debtor's "center of main interests," pursuant to section 1516 of the Bankruptcy Code it is presumed, absent evidence to the contrary, that the debtor's center of main interests is located where the debtor has its registered office.  11 U.S.C. § 1516(c).   The concept of center of main interests has been equated by courts to the concept of a debtor's "principal place of business."  *In re Tri-Continental Exchange Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006).

44.     Here, Think3 is a Delaware corporation, giving rise to a presumption that Delaware is the "center of main interests."   Nonetheless, there is no doubt that Italy is Think3's "center of main interests."

45.     Think3 has substantial business operations in Italy.   All of Think3's employees (other than Ms. Roof, an outside restructuring professional) are located in Italy.   Ferrari Declaration ¶¶ 12, 16-23.

DM2\2927353.3 99999/99999

46. The overwhelming majority of Think3's creditors are located in Italy. Not surprisingly, the overwhelming amount of debt (noted by Think3 in its own Chapter 11 Case), is owed to creditors located in Italy. Ferri Declaration ¶¶ 24 and 25. Indeed, the Schedules and Statement of Financial Affairs filed in Think3's Chapter 11 Case demonstrate that the overwhelming majority of Think3's creditors are located in Italy, as are the overwhelming majority of Think3's debt obligations.

47. Think3 has bank accounts in Italy. Think3 has four (4) Italy-based bank accounts with: (i) Unicredit Banca; (ii) Cassa Risparmio Bologna; (iii) Banca Imola; and (iv) Credito Bergamasco. Ferri Declaration ¶¶ 28.

48. Think3's primary assets are located in Italy. Ferri Declaration ¶¶ 16-23. Ms. Roof has also noted repeatedly in case filings in the Chapter 11 Case that Think3's books and records are located in Italy.

49. The overwhelming majority of Think3's revenues are generated in Italy. Ferri Declaration ¶¶ 26 and 27.0

50. The facts set out above demonstrate that Think3's "center of main interests," as that phrase is used in the statute, is in Italy. *See*, 11 U.S. C. § 1502(4); *See, e.g.*, *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd*., 389 B.R. 325, 335-37 (S.D.N.Y. 2008) ("*Bear Stearns*") (focusing on, *inter alia*, the location of: the debtor's headquarters, "those who actually manage the debtor," the debtor's "primary assets," the majority of the debtor's creditors "or of a majority of the creditors who would be affected by the case").

51. The conclusion that Think3's center of main interests is in Italy is consistent with the construction of the phrase "center of main interests" as it has been used in the European Union for some time now: under the EU Convention, the phrase means "the place where the debtor

conducts the administration of his interests *on a regular basis and is therefore ascertainable by third parties.*" *Id*. at 336 (citing decision below and quoting EU Council Reg. (EC) No. 1346/2000) (quotations omitted) (emphasis supplied). Case law and commentary equates this "ascertainable by third parties" concept to the general concept of a "principal place of business" in United States law. *Bear Stearns*, 389 U.S. at 336. On the facts of this case, Italy is the location where Think3 is ascertainable by third parties consistent with a principal place of business analysis: Indeed *creditors did just that* when they commenced involuntary proceedings against Think3 in Italy.

52. Because the Italian Proceeding is a foreign proceeding located where Foreign Debtors' "center of main interests" are located in Italy, it is therefore a "foreign main proceeding" under the Bankruptcy Code.

### iii. *The Foreign Representative Meets the Statutory Requirements*

53. The next requirement for recognition of a foreign proceeding under section 1517(a) of the Bankruptcy Code is that the "foreign representative applying for recognition be a person or body." *See* 11 U.S.C. § 1517(a)(2). Indeed, the term "foreign representative" is defined in section 101(24) of the Bankruptcy Code as follows:

> [A] person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24); s*ee also* 2 COLLIER ON BANKRUPTCY ¶101.24 (noting that the phrase "should be given a broad construction").

54. Doctor Andrea Ferri is an individual who has been duly appointed by the Italian Court. Dr. Ferri's appointment is not only as Trustee for Think3, he has also been appointed by the Italian Court to act as "foreign representative" in U.S.-based Chapter 15 proceedings, and the

Italian Court has authorized him to commence such proceedings. Ferri Declaration at Exhibits A and B.

55.    The requirements of sections 101(24) and 1517(a)(2) of the Bankruptcy Code have been met. Accordingly, Dr. Ferri should be recognized by the Court as Think3's Foreign Representative.

### iv.    *The Requirements of Bankruptcy Code Section 1515 Have Been Met*

56.    The final requirement for recognition of a foreign main proceeding is compliance with the procedural and evidentiary requirements of section 1515 of the Bankruptcy Code. Section 1515 (i) requires that a petition be filed with the court and (ii) lists the documents and statements that must accompany the petition for recognition. *See* 11 U.S.C. § 1515; s*ee also* COLLIER ON BANKRUPTCY ¶ 1515.02. All of the requirements of section 1515 of the Bankruptcy Code have been met.

57.    First, the Chapter 15 Petition in this case was properly filed by the Foreign Representative on behalf of Think3, as required by section 1515(a) of the Bankruptcy Code.

58.    Second, documents evidencing: (i) the appointment of the Petitioner as foreign representative and (ii) the commencement and existence of the Italian Proceeding, have been provided as Exhibits A and B, respectively, to the Foreign Representative Declaration, as required under sections 1515(b) and (d) of the Bankruptcy Code.

59.    Finally, as is required by to section 1515(c), the Foreign Representative Declaration includes a statement identifying the Italian Proceeding as the only foreign proceeding currently pending with respect to Foreign Debtors. *See* Foreign Representative Declaration.[4]

---

[4] At bottom, Think3 respectfully submits that the Foreign Representative, Think3 has demonstrated that Think3 has a nontransitory economic presence in Italy. *See* 11 U.S.C. §§ 1502; 1517.

DM2\2927353.3 99999/99999

**Conclusion**

Based upon the foregoing, Dr. Andrea Ferri, as Trustee in the Italian Proceedings and Foreign Representative herein, respectfully requests that the Court enter an order, in the Form annexed hereto as **Exhibit A,** finding that: (i) the Foreign Representative meets the statutory requirements of 11 U.S.C. §§ 101(24) and 1517(a)(2); and (ii) that the Italian Proceeding qualifies as a foreign main proceeding under the statutory requirements of 11 U.S.C. §§ 101(23), 502(4) and 1516(c), and grant such other and further relief as is necessary and appropriate.

Dated: August 1, 2011

**DUANE MORRIS LLP**

*/s/ Wesley W. Yuan*

Joel M. Walker, Esq.
Duane Morris LLP
Suite 5010
600 Grant Street
Pittsburgh, PA 15219-2802
Ph: 412.497.1000
Fax: 412.497.1001
*JMWalker@duanemorris.com*
    -and-
Wesley W. Yuan, Esq.
Duane Morris LLP
1330 Post Oak Boulevard
Houston, TX 77056
Ph: 713.402.3900
Fax: 713.402.3901
*WWYuan@duanemorris.com*
    -and-
William C. Heuer, Esq.
Rudolph J. Di Massa, Jr., Esq.
Gia G. Incardone, Esq.
Duane Morris LLP
1540 Broadway
New York, New York 10036-4086
*Counsel to the Foreign Representative*

20

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was served on those individuals or entities appearing on the Master Service List of Cause No. 11-11252-hcm dated June 10, 2011 via first class United States mail, postage prepaid and properly addressed, on this 1st day of August, 2011.

/s/ *Wesley W. Yuan*
/s/ Wesley W. Yuan

DM2\2927353.3 99999/99999