# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | (CHAPTER 15) |
| | § | |
| THINK3 INC., | § | CASE NUMBER 11-11925-HCM |
| | § | |
| DEBTOR IN A FOREIGN PROCEEDING. | § | |

### DEBTOR'S OBJECTION TO (I) VERIFIED PETITION FOR RECOGNITION OF FOREIGN MAIN PROCEEDING AND REQUEST FOR CHAPTER 15 RELIEF AND (II) NOTICE OF WITHDRAWAL OF CHAPTER 15 PETITION AND REQUEST FOR RECOGNITION

think3 Inc., debtor and debtor-in-possession in a Chapter 11 case before this Court, case number 11-11252, (the "Debtor"), as a party in interest to the *Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief* (the "Verified Petition") and the *Notice of Withdrawal of Chapter 15 Petition and Request for Recognition* (the "Notice of Withdrawal") filed by Dr. Andrea Ferri, files this *Debtor's Objection to (I) Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief and (II) Notice of Withdrawal of Chapter 15 Petition and Request for Recognition* pursuant to Federal Rule of Bankruptcy Procedure 1011(b) in response to the Verified Petition and the Notice of Withdrawal, and respectfully represents the following:

### I. Preliminary Statement

1.     The Verified Petition is an attempt by Dr. Andrea Ferri (the "Italian Trustee") to have this Court validate his continuing actions beyond the scope of his Italian statutory authority and wrest further control over the Debtor's future financial viability away from the Debtor's management.   Under Italian law, the Italian Trustee only has authority over the Debtor's

secondary office in Italy (the "Italian Branch") and any assets that are located in Italy.[1]  Until he obtains recognition by other courts, his authority stops at the Italian border, as does the effect of the stay resulting from the Italian Proceeding.[2]  Notwithstanding these statutory limitations on the Italian Trustee's authority, he continues to appropriate elements of the business of the Debtor and interfere with the Debtor's contractual relationships in the United States and venues far beyond Italy.

2.      After submitting to the jurisdiction of this Court and seeking a ruling on his Verified Petition, when faced with opposition to his request, the Italian Trustee filed the Notice of Withdrawal.  The Italian Trustee cannot be permitted to "test the waters" by filing a petition for recognition, determine that he will not prevail, be permitted to withdraw his Verified Petition and then run to Italy, or Poland, or India, and try again in what he perceives to be a more favorable forum.  A determination of the center of main interests ("COMI") of think3 will be necessary for this Court to determine the effect of its prospective rulings on such matters as the assumption or renegotiation of agreements  with Versata, ownership of assets of this Debtor, the effect of any sale order of this Court and any ruling regarding avoidable transfers.  Resolution of some of these issues will impact the settlement with Versata currently pending before this Court and the ability of think3 to effectively reorganize.  Consequently, a determination by this Court of the COMI of think3 is necessary.

3.      Section 1516(b) of Title 11 of the United States Code (the "Bankruptcy Code") provides that the country of the Debtor's registered office—in this case, the United States—is presumed to be its COMI.  It is incumbent upon the Italian Trustee to rebut that presumption and

---

[1] The Italian insolvency proceeding through which the Italian Trustee was appointed is case number 69/2011 (the "Italian Proceeding").

[2] *See infra* notes 4-5.

prove otherwise. It does not appear that the Italian Trustee will present any evidence to support his allegations. The evidence available to the Debtor demonstrates that the Debtor has historically maintained its world headquarters in the United States where its board of directors conducted meetings and where all significant decisions were made. It appears that substantially all of its contracts were entered into in English, not Italian, and contained choice of law, and often venue, provisions of the United States. The Debtor filed tax returns as a United States corporation in the United States. The Debtor maintained bank accounts in the United States. The overwhelming source of the funding of the Debtor came from United States sources and the funding was negotiated and documented in the United States. Much of the funding was based on representations that the Debtor was a United States business, and in some instances, the funder could not have provided the funding if the case were otherwise. The Debtor's current shareholder, ESW Capital, LLC ("ESW"), is an American corporate entity with its headquarters in the United States. The Debtor's prior shareholders were overwhelmingly United States entities. For many years, most of the directors and executive officers of the Debtor were residents of the United States, and the current director and current executive officer of the Debtor live in the United States. Since September of 2010, none of the executive officers of the Debtor have been Italians.[3] The historical accounting and law firms of the Debtor are in the United States. Although the Debtor maintained operations and employees throughout the world, both directly and through its subsidiaries, the nerve center of the Debtor was located in the United States where the significant decisions were made and directives issued. The COMI of the Debtor is the United States.

---

[3] To clarify and avoid any misperception, Joe Costello, the Chairman of the Board of the Debtor immediately prior to its sale to ESW, is an American residing in the United States, notwithstanding the appearance of his surname.

4. Even the court presiding over the Italian Proceeding has recognized that the main headquarters of the Debtor is in the United States and that the Debtor maintained a "branch office" in Italy.[4] The Injunction Ruling, attached hereto as **Exhibit A,** goes on to say that the bankruptcy of the Debtor has "effects obviously limited to the territory of the Italian state." Additionally, the Court of Bologna, Italy (the "Italian Bankruptcy Court"), when determining whether it had jurisdiction over the Debtor in its judgment regarding the joint petitions for bankruptcy, attached hereto as **Exhibit B**, acknowledged that the Debtor was only present in Italy through a "branch office, or at least a permanent representative office."[5] The Italian Trustee should be bound by these rulings of his own courts.

5. Moreover, the Debtor has not been able to fully evaluate the allegations in the Verified Petition because the Italian Trustee has commandeered certain books and records of the Debtor and has refused the repeated requests of the Debtor for access to its own books and records. Although the Italian Trustee has purportedly requested of the Italian Bankruptcy Court authorization to provide the Debtor with access to its books and records, the information available to the Debtor reveals that the Italian Trustee stated to the Italian Bankruptcy Court that he was not in favor of granting such access to the Debtor. This duplicity by the Italian Trustee is indicative of his lack of good faith and is relevant to his request for recognition under Chapter 15. The Debtor has been denied access to large portions of the Italian Bankruptcy Court files, including the Italian Trustee's reports. After the Italian Bankruptcy Court failed to rule on the request of the Italian Trustee, the Debtor filed its own motion for access to its books and records held by the Italian Trustee and access to the Italian Bankruptcy Court files with the Italian

---

[4] See the Order of the Court of Bologna, Industrial Division, dated July 26, 2011 attached hereto as **Exhibit A** (the "Injunction Ruling"). Exhibit A was attached as Exhibits I & J to the Ferri Declaration (defined below).

[5] See the Order of the Court of Bologna, Bankruptcy Division, dated April 14, 2011 attached hereto as **Exhibit B** (the "Italian Bankruptcy Judgment").

Bankruptcy Court on August 3, 2011.  The Debtor's motion was denied the next day.  As conducted, there is little transparency to the Italian Proceeding.  Without access to these records and pleadings it is difficult for the Debtor to adequately verify the allegations of the Italian Trustee, further assess the good faith of the Italian Trustee, and oppose his request for recognition.  Since it appears that the Italian Trustee will not, or cannot, provide evidence in support of the Verified Petition, his request for recognition as a foreign main proceeding should be denied.

6.     In addition to effectively stonewalling the Debtor's attempts to obtain information and preserve its going concern business, the Italian Trustee has taken affirmative actions exceeding his statutory authority in an attempt to consolidate his position such as seizing funds from a bank account of the Debtor in the United States and taking control of websites of the Debtor outside of Italy.  The Italian Trustee has reported to the Italian criminal authorities prior management of the Debtor for unspecified allegations relating to the Debtor.  And when the current Chief Restructuring Officer (the "CRO") of the Debtor, Rebecca Roof of AlixPartners, regained control of a website of the Debtor in the United States, the Italian Trustee appears to have reported her to the Italian criminal authorities.

7.     The Italian Proceeding is a collective proceeding in name only and is *de facto* a collection effort by the Italian Government, which claims that it is owed over $23 million for taxes and employee benefits under Italian law (the "Tax Claim").  The Tax Claim appears to have priority over all other claims under Italian law and is essentially a collection action for the

benefit of the Italian government.[6]  The Italian Proceeding is actually a collection action for a foreign tax claim and should not be considered a foreign main proceeding.[7]

8.     The Debtor has exercised its independent business judgment and negotiated a proposed settlement with Versata FZ-LLC ("Versata"), and others, which it believes is in the best interests of the Debtor, its creditors, and other parties in interest.  The advantages of the proposed settlement are set forth in a motion (the "Settlement Motion") currently pending before this Court and will not be repeated here, but suffice it to say that absent a settlement with Versata, it will be difficult, if not impossible, for the Debtor to reorganize.[8]  The Debtor recognized that Versata is a related entity and in order to avoid an appearance of conflict retained Ms. Roof as CRO to exercise her independent judgment, operate the Debtor, and negotiate with Versata.  The Italian Trustee has pursued a different strategy and obtained an order in the Italian Proceeding that purports to terminate certain rights of Versata.  The Italian Trustee is now attempting to vindicate his approach of exceeding his statutory authority, failing to cooperate, and attempting to intimidate the Debtor's CRO, director, and former management with criminal exposure, all while the business of the Debtor continues to deteriorate.  While cooperation between foreign insolvency proceedings is to be encouraged, under the unique facts of this case, the Court should deny recognition of the Italian Trustee's Verified Petition as a foreign main proceeding because, in addition to the failure of the Italian Trustee to meet the statutory criteria for recognition as a foreign representative of a foreign main proceeding,[9] doing so would further

---

[6] *In re* Gold & Honey, Ltd., 410 B.R 357 (Bankr. E.D.N.Y. 2009).

[7] See the discussion of the "revenue rule," *infra.*.

[8] The Court does not need to read it twice.

[9] Curiously, the Italian trustee has not sought alternative recognition as the foreign representative of a foreign non-main proceeding.  Possibly, this is because such recognition would not accomplish the goal of the Italian Trustee to control the worldwide operations of the Debtor for the benefit of the Italian government.

hinder the Debtor's restructuring efforts and encourage the Italian Trustee to continue to act beyond the limits of his authority.

9.      It is apparent that any successful reorganization of the Debtor will require the cooperation and funding of Versata.  If the Italian Trustee continues to interfere with the operations of the Debtor and Versata funds will continue to be dissipated that could otherwise be used to reorganize the Debtor and provide for its creditors.  Consequently, a finding by this Court that the COMI of the Debtor is in the United States, that the intellectual property and other intangible rights of the Debtor are in the United States, and that the orders of this Court are valid and binding upon the Italian Trustee and should be recognized by the courts of other countries would not only be legally and factually correct but will maximize the ability of  the Debtor to reorganize and provide for its creditors.

## II. Jurisdiction

10.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and it is a core proceeding under 28 U.S.C. § 157(b)(2)(P).  Venue is proper under 28 U.S.C. § 1410(1) or (2).

11.      This Court maintains jurisdiction over the Italian Trustee notwithstanding the Notice of Withdrawal.  Since the Italian Trustee was sued and served by Versata in an adversary proceeding in this Court, he remains subject to this Court's jurisdiction notwithstanding the Notice of Withdrawal or the ultimate disposition of the Chapter 15 case.

## III. Background

**A.      Background and Corporate Structure of the Debtor**

12.      The Debtor, together with its subsidiaries, is a global leader in the computer-aided design and product lifecycle management software market.  The Debtor provided manufacturing

companies with styling, engineering, tooling solutions, and customer support services designed to help companies optimize the entire product development process and to help industrial designers create better, more innovative products.

13. The Debtor was originally incorporated as CAD LAB, Inc., a California corporation in 1997. On January 11, 1999, the shareholders, by written consent, passed a resolution changing the name of CAD LAB, Inc. to think3design, which would remain incorporated in California. The Debtor later incorporated in Delaware on June 21, 2000, following the creation of a subsidiary and a merger of the existing entity into the subsidiary, effectively changing the name to think3 Inc. think3 Inc. merged with think3 S.p.A., an Italian entity, on December 19, 2000, and remained incorporated in Delaware as the surviving entity. Since June of 2000, the Debtor's registered office and agent, The Corporation Trust Company, has been located at 1209 Orange Street, City of Wilmington, County of Newcastle, Delaware 19801. The Debtor has conducted business in Italy through its Italian Branch and an Italian subsidiary.

14. The Debtor has a worldwide presence through five wholly-owned subsidiaries: think3 GmbH (the "German Subsidiary"), think3 SARL (the "French Subsidiary"), think3 K.K. (the "Japanese Subsidiary"), think3 Designs Private Limited (the "Indian Subsidiary"), think3 China WOFE (the "Chinese Subsidiary"), and one 70% owned subsidiary, think3 SRL (the "Italian Subsidiary"). An insolvency proceeding has been commenced against the Italian Subsidiary in Italy. The Chinese Subsidiary is in the process of dissolving.[10] The Indian Subsidiary has ceased operations. The French and German Subsidiaries have sought insolvency

---

[10] The Debtor intends to operate in China under a different business format.

protection in France and Germany, respectively. The Japanese Subsidiary of the Debtor is operating at this time.

15. In 1997, as a California corporation, the Debtor maintained its headquarters in Santa Clara, California. Over the last decade, the Debtor moved its headquarters from California to Ohio and then to Texas, but at all times remained within the territorial limits of the United States. The Debtor has held the vast majority of its board of director meetings in the United States.[11] Since September of 2010 all director action of the Debtor has been conducted in Texas. Following its acquisition by ESW in September of 2010, the headquarters of the Debtor has been in Texas, all of its executive officers have been residents of the United States, and none of its executive officers have been residents of Italy. The current director of the Debtor is Andrew Price, who lives in Texas. Rebecca A. Roof is the Debtor's CRO and Secretary. She lives in Texas.[12]

16. Since 1997, the owners of the Debtor have consisted almost entirely of American-based venture capital funds, and substantially all of the capitalization of the Debtor (in excess of $90 million) has come from American investors. The Debtor's current owner, ESW, is also American-based. A summary of the membership of the Debtor's board of directors, attached hereto as **Exhibit D**, shows that the board has consisted almost entirely of non-Italians since 2001.

---

[11] Attached hereto as **Exhibit C** is the Summary of Minutes of Meetings of the Board of Directors of think3 Inc. dating back to 1997 (the "Minutes Summary").

[12] Ms. Roof lives in Houston, Texas but because of the nature of her profession , the internal structure of AlixPartners and because AlixPartners does not have a Houston office, she is technically a managing director in the New York office of AlixPartners.

## B. Events Leading up to Chapter 11 Filing

17. The Debtor has been in severe financial distress for some time. The worldwide economic downturn caused a decline in the industries of the Debtor's target customers, and the Debtor has been operating at a loss for several years. In late 2010, the Debtor embarked on an out-of-court restructuring plan aimed at generating enough cash to stabilize its operations, begin paying off liabilities, and create funding for the further development of its intellectual property in China (the "China IP"). This plan hinged on a significant reduction in employees, outsourcing of activities, generation of revenue through contractual relationships, and on the sale of the Debtor's intellectual property, other than the China IP (the "Global IP").

18. On October 5, 2010, the Debtor transferred its Global IP to Versata through that certain Technology Licenses Agreement with Versata (the "Licenses Agreement"). After transferring the Global IP to Versata, the Debtor no longer had a need to employ as many employees because it would no longer be developing the Global IP. In addition, on September 28, 2010, the Debtor entered into a Service Agreement with Versata Enterprises, Inc. (the "Managed Service Agreement"). Under the Managed Service Agreement, Versata Enterprises, Inc. agreed to provide the Debtor with administrative and management services, including human resources, accounting, and legal services. The Debtor thus no longer needed its own employees to perform routine administrative functions after the Merger. The Debtor sought to scale back its operations and laid off many of its employees worldwide, including in Italy, which has resulted in substantial claims against the Debtor and its subsidiaries for unpaid wages and severance. Contrary to the statements of the Italian Trustee, these claims are not concentrated in Italy, but rather are scattered across the globe. The Debtor's Schedules of Assets and Liabilities

and Amended Schedules of Assets and Liabilities reflect the wide array of claims against the Debtor.

19.     The License Agreement is governed by Texas law, was negotiated in the United States, and was executed in the United States.  Under the License Agreement, the Debtor granted Versata the exclusive right to use the Global IP in the design, development, manufacture, marketing, distribution, and support of products and effectively transferred ownership of a significant portion of its intellectual property.  In exchange, Versata agreed to pay the Debtor $3,000,000 and entered into agreements with the Debtor to provide sources of continuing revenue.  The transaction with Versata provided much-needed cash that allowed the Debtor to pay some of its creditors, attempt to utilize the China IP, and otherwise commence implementation of its business plan.

20.     On April 14, 2011, the Italian Bankruptcy Court declared the Debtor bankrupt after several creditors had commenced an insolvency proceeding against the Debtor and the Italian Subsidiary, effectively disrupting any further restructuring efforts by the Debtor.  The attempts of the Debtor to restructure its Italian operations, which contemplated a significant reduction of the number of Italian employees, had previously met considerable resistance, precipitated labor unrest, and became a political issue in Bologna.  The Italian Bankruptcy Court appointed Dr. Andrea Ferri as trustee (or receiver, depending on the translation) for think3 Inc. (previously defined as the "Italian Trustee").  The Italian Bankruptcy Court also appointed Massimiliano Magagnoli as the trustee or receiver for the Italian Subsidiary.  Mr. Magagnoli has not joined in any actions taken by the Italian Trustee.

21.     The Italian Trustee has asserted control over the Debtor's assets, including certain of its books and records, funds in its United States bank account, the think3 brand, many of the

contractual relationships and receivables of the Debtor and its subsidiaries, the China IP, and the Global IP. The Italian Trustee's actions have created considerable confusion among customers[13] of think3 products and have substantially interfered with the Debtor's business, which includes activities pursuant to agreements with Versata. These activities have produced significant revenue for the Debtor.

22.     On May 18, 2011, as a result of the Debtor's inability to access and further develop its assets, its lack of liquidity, its desire to preserve its customer relationships, and its plan to restructure operations to develop the China IP and otherwise conduct its business, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court (the "Chapter 11 Case"). The Debtor is a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

23.     On August 10, 2011, in order to protect its interest in the Japanese Subsidiary and its business interests in Japan, the Debtor filed a petition for recognition of the Chapter 11 Case as a foreign proceeding under the Law Relating to Recognition and Assistance for Foreign Insolvency Proceedings ("LRAF") enacted by Japan. The recognition proceeding is pending in the Tokyo District Court and is numbered "Heisei 23 (sho) No.3." On August 11, 2011, the Tokyo District Court entered an order recognizing the Chapter 11 Case as a foreign proceeding under LRAF, and prohibiting creditors and other parties in interest from exercising remedies against the Debtor's property in Japan.

## C.     The Dispute Between Versata, the Debtor, and the Italian Trustee

24.     Following his appointment, the Italian Trustee sought the approval of the Italian Bankruptcy Court of his decision to terminate the License Agreement. On May 2, 2011, the

---

[13] Although certain customer contracts had been assigned to Versata, many of the Debtor's customers declined to enter into novations with Versata. Consequently, the Debtor still engaged in activities with these customers, which remain customers of the Debtor.

Italian Bankruptcy Court acknowledged the termination of the License Agreement by the Italian Trustee and subsequently confirmed the "correctness" of the Italian Trustee's actions on June 28, 2011. The Italian Trustee asserts that as a consequence of his purported termination of the License Agreement, Versata no longer has the right to use the Global IP. Versata disputes the finality and scope of that order under Italian law.

25. Versata has asserted that under the U.S. Copyright Act, 17 U.S.C. §§ 101 *et seq.*, the transfer of the Global IP to Versata under the License Agreement was essentially a transfer of ownership that cannot be terminated. Moreover, even if the transaction under the License Agreement is deemed to only create a license, Versata asserted that it is entitled to retain its rights to use the Global IP regardless of the Italian Trustee's purported termination, as provided in section 365(n) of the Bankruptcy Code.

26. The Italian Trustee also filed a suit seeking an injunction (the "Injunction Suit") against Versata in the Civil Court of Bologna, Italy (the "Italian Civil Court") to prevent Versata from using the Global IP and the think3 brand and from publishing any information online claiming to have the rights to the Global IP. On July 26, 2011, the Italian Civil Court entered an injunction against Versata ("the Italian Injunction Ruling"). Versata has informed the Debtor that it intends to challenge the Injunction Suit.

27. As a result of the Italian Trustee's interference with Versata's customers, Versata filed a complaint against the Debtor for breach of the License Agreement, tortious interference, and declaratory relief in the United States District Court for the Western District of Texas, Austin Division, in the case styled and numbered *Versata FZ-LLC v. Think3, Inc.*, Civil Action No. 1:11-cv-404 (the "Versata Lawsuit"). Versata alleges that substantial damages continue to accrue against the Debtor as a result of the continuing breach of the License Agreement.

28.     The Debtor has negotiated the proposed settlement with Versata.  On July 11, 2011, the Debtor filed its *Motion to (I) Approve Compromise and Settlement of Claims by and between think3 Inc., Versata FZ-LLC, Versata Development Group, Inc., and Versata Software, Inc., (II) Assume Technology License Agreement, and (III) Approve Sale of Certain Intellectual Property Interests to Versata FZ-LLC* (the "Settlement Motion").  The Debtor served the Settlement Motion on the Italian Trustee, the Italian Trustee's U.S. and Italian Counsel, and the Italian Bankruptcy Court by July 15, 2011.  The Italian Trustee has opposed this motion.

29.     On August 1, 2011, the Italian Trustee filed the Verified Petition, and in support of it, the *Declaration of Dr. Andrea Ferri Pursuant to 28 U.S.C. § 1746* (the "Ferri Declaration").  In these two documents, the Italian Trustee alleged, among other things, that (1) he is required to take possession and control over all of the Debtor's business and assets; (2) he is obligated to reorganize or rehabilitate the Debtor; (3) the Debtor continues to enter into new contracts and engagements with new and existing clients, generating revenue which has been sufficient to fund operations and professional expenses in Italy; (4) the Debtor's revenue comes primarily from Italy; (5) the effort to assume the License Agreement and sell the Debtor's intellectual property makes little economic sense; (6) the debtor has no employees in the United States and only had one employee in the United States in the last few years; (7) all of the Debtor's employees, other than Ms. Roof, are in Italy; (8) the Debtor's research and development team is located in Italy; (9) the Debtor has substantial business operations in Italy and a minimal administrative presence in the United States; (10) CAD Lab was an Italian company based in Italy for more than twenty years; (11) the Debtor's assets—including its primary asset, the source code for the Debtor's Global IP—are located in Italy; (12) the overwhelming majority, in number and amount, of the Debtor's debts are owed in Italy or to

Italians; (13) after ESW purchased the Debtor, the Debtor's operations in Italy did not change; (14) the Debtor's operations are centered in Italy; (15) the Debtor's contact with the United States only amounts to a post office box number; (16) the Italian Bankruptcy Court has jurisdiction over the property Versata has asserted control over, the Global IP; (17) the filing of the Versata Lawsuit violated the Italian stay; (18) the Italian Proceeding is a collective proceeding; (19) the Debtor's headquarters and business operations are in Italy; and (20) Italy is the COMI of the Debtor.  Following these allegations, the Italian Trustee requested the Court to find that the Italian Proceeding qualifies as a "foreign main proceeding."  The Debtor denies the Italian Trustee's allegations1, 2, 5, 9, 11, 13, 15, 16, 17, 18, 19, and 20, is without sufficient information to admit allegations 3, 4, 6, 7, 8, 10, 12, and 14 and consequently denies such allegations, and objects to the requested relief.

30.    On August 17, 2011, Versata filed a Complaint (the "Complaint") against the Debtor and the Italian Trustee in the Chapter 11 Case, Adversary No. 11-01221.  The Complaint seeks declaratory relief, injunctive relief, and damages for, *inter alia*, breach of the License Agreement and infringement of Versata's patents.

31.    On August 29, 2011, the Italian Trustee filed the Notice of Withdrawal.  Under 11 U.S.C. § 1504, a "case under this chapter is commenced by the filing of a petition for recognition of a foreign proceeding under section 1515."  Federal Rule of Bankruptcy Procedure 1017 is directly on point and provides that "a case shall not be dismissed on motion of the petitioner, for want of prosecution or other cause, or by consent of the parties, before a hearing on notice." FED. BANKR. R. PROC. 1017(a).  Consequently, a hearing has been set by this Court regarding the dismissal of the Chapter 15 case.

32.     When dismissing a case, a court should consider, among other things, the following factors:   (1) whether dismissal is in the best interest of creditors; (2) whether the opposing party, especially creditors, will be prejudiced by the dismissal; (3) the diligence of the moving party in bringing the motion; (4) any undue burden or harassment caused by the moving party; (5) the extent to which the underlying action has progressed; (6) the duplicative expense of relitigating elsewhere; and (7) the adequacy of the moving party's explanation.   A petitioner should not be able to avoid an adverse decision by dismissing a case, and more importantly, a petitioner should not be allowed to dismiss a case just to pursue its cause in another forum that will apply a different body of substantive law.   The Debtor objects to the dismissal of the Verified Petition.

## IV. Objection

33.     The Debtor objects to the relief requested in the Verified Petition because the Debtor's COMI is located in the United States, not Italy; therefore, by definition, the Italian Proceeding cannot be the foreign main proceeding.   Additionally, arguments that the Debtor's COMI is located anywhere but the United States are precluded by (i) collateral estoppel, (ii) rulings of the Italian courts, which effectively amount to an admission by the Italian Trustee that the COMI of the Debtor is in the United States, and (iii) the fact that granting recognition to the Italian Proceeding as a foreign main proceeding would be manifestly contrary to public policy.

**A.     The Debtor's Center of Main Interest Is in the United States and the Italian Proceeding Does Not Meet the Requirements of a Foreign Main Proceeding**

34.     The Debtor's COMI, equivalent to its principal place of business, is in the United States, therefore, the Italian Proceeding is not the foreign main proceeding.

35.     Section 1517 of the Bankruptcy Code provides that the Court shall, after notice and a hearing, enter an order recognizing a foreign proceeding if a petition for recognition meets

the following requirements: (1) the foreign proceeding sought to be recognized is either a foreign main proceeding or a foreign nonmain proceeding; (2) the foreign representative is a person or body; and (3) the petition meets the requirements of section 1515.

36. A foreign main proceeding is "a foreign proceeding pending in the country where the debtor has the center of its main interests." 11 U.S.C. § 1502(4). A foreign nonmain proceeding is any foreign proceeding, other than the foreign main proceeding, pending in a country where the debtor has a place of operation where it "carries out a nontransitory economic activity." § 1502(2), (5). Thus, for a foreign proceeding to be granted "main proceeding" status, the proceeding must be taking place in the country that is the debtor's COMI.

37. Only one Fifth Circuit case has addressed the issue of a debtor's COMI. See *Lavie v. Ran* (*In re Ran*), 607 F.3d 1017 (5th Cir. 2010). While the precedent provided in *Ran* is distinguishable because *Ran* addressed the issue of determining an individual debtor's COMI, it still provides substantial guidance on how to determine the location of any debtor's COMI and cites several cases that address corporations. *See id.* at 1023-25.

38. The *Ran* bankruptcy court explained that the use of the single criterion of a debtor's COMI for qualifying a foreign proceeding as a main proceeding is intended to avoid the risk of various foreign proceedings competing for recognition as the main proceeding. *In re Ran*, 390 B.R. 257, 263 (Bankr. S.D. Tex. 2008), *aff'd*, 406 B.R. 277 (S.D. Tex. 2009), *aff'd*, 607 F.3d 1017 (5th Cir. 2010). The Fifth Circuit noted that the Bankruptcy Code does not define COMI. *Ran*, 607 F.3d at 1022. Cases that have addressed the COMI issue have explained that, internationally, COMI is generally defined as "the place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties." *See, e.g.*, *British Am. Ins. Co. Ltd.*, 425 B.R. 884, 909 (Bankr. S.D. Fla. 2010); *In re Tri-*

*Continental Exchange Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Ca. 2006). Each of these cases explained that COMI is essentially the equivalent of a debtor's principal place of business. *See, e.g.*, *British Am. Ins.*, 425 B.R. at 908. A review of the cases discussing COMI reveals that the determination is applied in a practical and flexible fashion to fit the specific facts of a particular case.

        **1.**        **The Italian Trustee Has Not Met His Burden of Proof to Rebut the Presumption That the Debtor's Center of Main Interests Is in the U.S.**

39.      In the absence of contradictory evidence, "the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c). In other words, if the issue of COMI was uncontested, the Debtor's COMI would be in the United States, specifically Delaware. The presumption that the Debtor's COMI is its registered office is, however, rebuttable by evidence to the contrary. *Ran*, 607 F.3d at 1022 (citing *Tri-Continental*, 349 B.R. at 634). The *Tri-Continental* court instructed that in contested matters, "if the foreign proceeding is not in the country of the registered office, then the foreign representative [who is seeking recognition of a main proceeding] has the burden of proof on the question of [COMI]." *Tri-Continental*, 349 B.R. at 635. It follows that "the burden of proof as to the [COMI] is never on the party opposing 'main' status." *Id.* Once the presumption has been rebutted, the foreign representative still has the burden to prove the location of the debtor's COMI by a preponderance of the evidence.

40.      Since June of 2000, the Debtor's registered office and agent, The Corporation Trust Company, has been located at 1209 Orange Street, City of Wilmington, County of Newcastle, Delaware 19801.[14]

---

[14] Although a small state, Delaware was the first state to ratify the Constitution of the United States and has remained one of the United States ever since.

41.     The Ferri Declaration provides a brief, slanted summary of the Debtor's affairs. *See* Ferri Declaration, ¶¶ 3-28. The Ferri Declaration's allegations consist of several conclusory statements unsupported by facts. *See, e.g.*, Ferri Declaration, ¶¶ 7, 16, 23, & 27. Additionally, many of the allegations are inadmissible hearsay because the Italian Trustee lacks personal knowledge of the information sworn to in the Ferri Declaration. *See, e.g.*, Ferri Declaration, ¶¶ 7, 11, 20, & 24. The Ferri Declaration, therefore, fails to support the determinative facts alleged in the Verified Petition. *Compare* Ferri Declaration, ¶¶ 18-27 *with* Verified Petition, ¶¶ 17, 22-23, 45, & 48.

42.     Although the Verified Petition also references the Debtor's schedules as support, the Italian Trustee's allegations are based on "reasonable inferences" that improperly inflate the number of Italian creditors by assuming if a creditor's address is unknown, that creditor is located in Italy. The following are examples of creditors that the Italian Trustee's assumes are Italian creditors: Cadenas GmbH[15]; Locust Graphic Studio; Nawdeep Puranik Engineering Services; NCC Services Limited[16]; and Nest Consulting Limited[17]. Furthermore, the schedules that the Verified Petition refers to have since been amended, and as amended, have significantly minimized the persuasiveness of the Italian Trustee's argument. Even if the Italian Trustee could establish that the majority of the creditors of the Debtor were Italian, that fact alone is not enough to establish a COMI in Italy. In *Ran* the court noted that Ran's creditors were in Israel and that Ran's principal assets were being administered in a bankruptcy proceeding pending in Israel, but still concluded that Ran's COMI was in the United States.

---

[15] Cadenas GmbH describes itself on it website as "CADENAS ist ein führender Software Hersteller in den Bereichen Strategisches Teilemanagement, Teilereduzierung und Elektronische Produktkataloge" and appears to be headquartered in Augsberg, Germany

[16] Apparently a UK company.

[17] Apparently an Australian company.

43. The Verified Petition and its supporting documents do not establish by a preponderance of the evidence that the Debtor's COMI is outside of the United States.

**2. The Court Should Look at the Totality of the Circumstances to Determine the Debtor's COMI**

44. Normally, the COMI of a debtor is determined at the time the petition for recognition is filed. *Ran*, 607 F.3d at 1025; *In re Fairfield Sentry Ltd.*, 440 B.R. 60, 66 (Bankr. S.D.N.Y. 2010). But the facts before this Court align with circumstances that each court to address the issue has recognized as reasons to look beyond the snapshot of facts as they exist at the filing of the petition. *See Ran*, 607 F.3d at 1026; *British Am. Ins.*, 425 B.R. at 910; *Fairfield Sentry*, 440 B.R. at 66.

45. While *Ran* cautions that assessing a debtor's COMI by looking at its operational history would increase the likelihood of conflicting determinations, the Fifth Circuit recognized that if presented with facts that included a recent shift in the debtor's COMI, an analysis of the Debtor's prior operations would be appropriate. *See Ran*, 607 F.3d at 1025-26.

46. The court in *British American Insurance Co., Ltd.* also acknowledged the wisdom of a flexible, factual approach to the determination of COMI. *British Am. Ins.*, 425 B.R. at 909. The *British Am. Ins.* court explained that Bankruptcy Code sections 1517(d) and 1518(1) "exhibit a policy that the recognition process must remain flexible . . . rather than setting an arbitrary determination point." *Id.* at 910. Based on the facts before it, the court determined that the actions of the foreign representative—referred to as a judicial manager—did not cause the debtor's COMI to shift from the country where the debtor was conducting its administrative functions. *Id.* at 914.

47. The Bankruptcy Court of the Southern District of New York in *In re Fairfield Sentry Ltd.* acknowledged *Ran* and concluded that a "totality of the circumstances" approach

should be utilized when appropriate. *Fairfield Sentry*, 440 B.R. at 66 ("The jurisprudence emerging from these courts does not preclude looking into a broader temporal COMI assessment where there may have been an opportunistic shift to establish COMI (i.e., insider exploitation, untoward manipulation, overt thwarting of third party expectations)").

48.     The most recent decision regarding the timing of the COMI determination is *In re Millennium Global Emerging Credit Master Fund Ltd., et al.*, 2011 Bankr. LEXIS 3237 (Bankr. S.D.N.Y Aug. 26, 2011), where the court determined that the appropriate date for determining the COMI of the debtor was the date of the filing of the proceeding of the foreign representative. In *Millennium,* Bermuda was held to be the debtor's COMI because the debtor was incorporated in Bermuda, the majority of its directors were in Bermuda, and the documents ascertainable by third parties stated that the debtor was a Bermuda company. The determination that Bermuda was the COMI of the debtor was made notwithstanding that the creditors were not in Bermuda and that the day to day operations of the debtor took place outside of Bermuda. At the time of the filing of the Italian Proceedings, all of the directors and executive officers of the Debtor resided and officed in the United States, the operative documents of the Debtor were in English and provided for the applicability of United States law, that the Debtor was a United States company was completely ascertainable by third parties, and the nerve center of the Debtor was in the United States.

>     ***a.***     ***The Actions of the Foreign Representative Are Irrelevant When Determining the COMI of think3***

49.     Consistent with *Ran, British Am. Ins.*, *Fairfield Sentry* and *Millennium,* the Court should determine the Debtor's COMI by looking at the facts as they existed independent of the actions of the Italian Trustee. Otherwise, a foreign representative who exercises authority over

the subject-debtor, whether properly or improperly, could dictate or improperly influence the determination of the COMI.

50.     Following the commencement of the Italian Proceeding, the Italian Trustee improperly attempted to assert control of the worldwide operations of the Debtor from Italy.  The actions of the Italian Trustee of the Debtor's branch office to usurp the management authority of the Debtor should not be a factor in a determination of COMI, and this Court should look to the activities of the Debtor independent of the actions taken by the Italian Trustee to avoid an attempt by the Italian Trustee to create the type of artificial change of COMI disfavored by the Fifth Circuit in *Ran*.  *See Ran*, 607 F.3d at 1026.

51.     By waiting nearly five months since the beginning of the Italian Proceeding to file the Verified Petition, the Italian Trustee has attempted to shift the COMI of the Debtor to Italy. [18] His attempts should be disregarded by this Court.

> **b.**     **The Italian Trustee Is Only Authorized to Liquidate the Debtor's Italian Assets and Has No Authority Over Assets Outside of Italy.**

52.     Under Italian law, an insolvency proceeding only affects a debtor's assets located within Italian territory, and assets outside of Italian territory or the European Union are not automatically included.  In cases such as the Italian Proceeding, assets outside of Italian territory can only be seized once the proceeding has been recognized by the relevant foreign court.  In addition, the Italian Proceeding is a "*Fallimento*," which is aimed exclusively at *dissolving* and *liquidating* the subject-debtor.  The Italian Trustee is being less than forthcoming with the Court when he alleges that he is obligated to "either liquidate or, if appropriate, reorganize or rehabilitate" the Debtor.  Verified Petition, ¶¶ 4, 7, & 41.  Until the proceeding is converted to a

---

[18] The Debtor is not conceding that the COMI is now in Italy with the Italian Trustee, but merely arguing that the actions taken by the Italian Trustee bear little weight in the determination of the COMI of the Debtor..

"*concordato fallimentare*" there is no reorganization proceeding. A "*concordato fallimentare*" is a different type of Italian insolvency proceeding that may be aimed at restructuring. Only a third party, or the debtor in certain circumstances, has the ability to promote a *concordato fallimentare*. If an Italian bankruptcy court grants the *concordato fallimentare*, the *fallimento* (i.e., the Italian Proceeding) would be terminated and the restructuring would take place by agreement outside of the bankruptcy court proceedings. Because a *concordato fallimentare* would require payment in full of the tax claim of the Italian government in excess of $23 million, a *concordato fallimentare* for the Debtor is effectively impossible.

53. Thus, under Italian law, many of the Italian Trustee's actions have exceeded his authority and should be seen as bad faith manipulation, exploitation, and entirely improper interference with the Debtor's business affairs. *See Fairfield Sentry*, 440 B.R. at 66.

**3. The Facts and Circumstances of the Debtor's Business and Affairs Require a Finding that the Debtor's Center of Main Interest Lies in the United States**

54. Courts typically consider the following factors when determining the COMI of a corporation: (1) the location of the debtor's headquarters; (2) the location of those who actually manage the debtor, which may be the headquarters of a holding company; (3) the location of the debtor's primary assets; (4) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and (5) the jurisdiction whose law would apply to most disputes. *Ran*, 607 F.3d at 1023 (citing *In re SPhinX, LTD.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371 B.R. 10 (S.D.N.Y. 2007); *accord British Am. Ins.*, 425 B.R. at 909 (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). These factors are non-exhaustive and do not all have to be met to establish COMI. *Ran*, 607 F.3d at 1023; *British Am. Ins.*, 425 B.R. at 909.

### a. The Debtor's Headquarters and Management Are, and Have Been, in the United States

55.     The Verified Petition's allegations, which lack supporting evidence, that the Debtor's headquarters and management are in Italy are incorrect.   Verified Petition, ¶ 50. According to *British Am. Ins.*, the headquarters of a corporation is where the primary management of an entity's business is undertaken." *British Am. Ins.*, 425 B.R. at 911.

56.     Since June of 2000, the Debtor's registered office and agent, The Corporation Trust Company, has been located at 1209 Orange Street, City of Wilmington, County of Newcastle, Delaware 19801.

57.     The Debtor's website over the last decade referred to the Debtor's United States offices as the "World HQ".  These headquarters offices have been located at (1) 2880 Lakeside Drive, Suite 250, Santa Clara, California 95054; (2) 6160 Stoneridge Mall Rd., Suite 280, Pleasanton, California 94588; (3) 312 Walnut Street, Suite 2470, Cincinnati, Ohio 45202; (4) 7723 Tylers Place Blvd., Suite 106, West Chester, Ohio 45069; and (5) 6011 West Courtyard Drive, Austin, Texas 78730.  The Debtor's website also mentioned other offices in (1) Bologna, Italy, which was referred to as the "European HQ"; (2) Tokyo, Japan; (3) Bangalore, India; (4) Beijing, China; (5) Germany; (6) France; and at one time even (7) Chicago.

58.     The Debtor's minutes of its board meetings overwhelmingly reflect that the board of directors met in the United States, and often met at either the Debtor's headquarters in Santa Clara, California or one of its venture capital owners' offices in Menlo Park, California.  The management of, and strategic decisions for, the Debtor and its subsidiaries were undertaken by the Debtor's officers and board of directors, most of whom were United States citizens based in the United States.[19]  The executive officers of the Debtor primarily consisted of United States

---

[19] *See* the Minutes Summary, **Exhibit C**.

citizens and all executive officers of the Debtor since September of 2010 were based in the United States. Since at least September of 2010 there have been no executive officers of the Debtor in Italy and all board meetings have taken place in the United States. All executive decisions have emanated from the United States. As the court noted in *British Am.*, a corporate entity must carry out its business through employees or agents. It makes no difference if the agent is a subsidiary. *British Am. Ins.*, 425 B.R. at 910. Much of the operations of the Debtor were conducted through its subsidiaries. As *Ran* points out, the headquarters of a holding company may be the location of a debtor's management. *Ran*, 607 F.3d at 1023. ESW, the parent company of the Debtor, maintains its headquarters in the United States. The Debtor's U.S. activities were not simply a "mailbox operation."

59. The accountants and attorneys for the Debtor have historically been located in the United States. Since the economic downturn in 2008, the Debtor has minimized its number of employees internally. While Italy may, or may not, currently be the country with the greatest number of the Debtor's employees, its operations in India employed the most people as recently as June of 2009 and many of the Italian employees may have been added since the appointment of the Italian Trustee. Companies whose COMI is obviously in the United States such as IBM, Dell, GE, Ford, and Caterpillar have more foreign employees than domestic employees.[20] Since its acquisition by ESW in September of 2010, the business model of the Debtor contemplated significant outsourcing with a corresponding reduction in the number of think3 employees.

---

[20] Harold Meyerson, *Business Is Booming*, THE AMERICAN PROSPECT, Jan. 28, 2011, *available at* http://prospect.org/cs/articles?article=business_is_booming; Josh Harkinson, *American magnate: Michael Dell: how a homegrown geek outsourced, downsized, and tax-breaked his way to the top*, MOTHER JONES, Mar.-Apr. 2011, *available at* http://findarticles.com/p/articles/mi_m1329/is_2_36/ai_n57009802/; Dave Lindorff, *Here's One for the Birthers: Is GE's Jeffrey Immelt Really an American?*, thiscantbehappening.net, Jan. 21, 2011, *available at* http://www.thiscantbehappening.net/node/403; LAURA CLAWSON & DANIEL MARSCHALL, WORKING AMERICA & AFL-CIO, OUTSOURCED: SENDING JOBS OVERSEAS: THE COST TO AMERICA'S ECONOMY AND WORKING FAMILIES, at 12, *available at* http://www.workingamerica.org/upload/OutsourcingReport.pdf.

Accomplishing this business strategy was hindered by the business-regulatory environment of Italy where it is often less expensive to retain an employee and drastically reduce the hours and activity of the employee than terminate the employee. It has been reported that, "it's either impossible or prohibitively expensive to fire most Italians."[21] Consequently, the continued existence of Italian employees of the Debtor is more attributable to the protective nature of the Italian labor laws than determinative of the COMI of the Debtor. In fact, the Debtor has information providing it reason to believe that many of the current Italian "employees" may be "volunteers" working for little or no wages.

60. Since ESW purchased the Debtor in 2010, an American and United States resident, Andrew Price, has served as the Debtor's sole director. ESW is the sole owner of the Debtor and its offices are in Austin, Texas. Prior to the acquisition of the Debtor by ESW in September of 2010, Filippo Zuccarello, an Italian, had served as an independent contractor consultant to the Debtor and, at one time, Zuccarello also served as the Debtor's CEO. Mr. Zuccarello's contract, with the Debtor specifically states that the headquarters of the Debtor is in the United States. At various points in time, the offices of COO and CFO have been held by Italians, but since September of 2010, no Italians have been executive officers of the Debtor. Ms. Roof is now the sole executive officer.

61. The Italian Trustee also argues that the location of certain of the debtor's books in Italy is evidence of management's location in Italy. In today's environment, books and records are not created with quill pens and kept in bound books. The books and records of a corporation, other than perhaps the minute books of directors meetings, are kept on computers which may be located at the company headquarters, or on a server halfway around the world. The "books and

---

[21] *The Parthenon in Rome*, *Review & Outlook*, THE WALL STREET JOURNAL, Aug. 10, 2011.

records" may exist on multiple servers, or outsourced to an entity like ADP, or kept "in the cloud". Consequently, the location of the books and records is not even listed as a factor in the principal cases cited in discussions of COMI.[22] The maintenance of the Italian books and records, however, is not a result of a managerial decision or evidence that management is in fact located in Italy. Instead, Italian tax law requires that the branch office have its own systematic and chronological accountings in Italy because the branch is subject to the same reporting and accounting obligations as an Italian resident company. Thus, books and records are in Italy for regulatory reasons, while other books and records are also maintained in several places, including in the United States. The Italian books and records were in the process of being "migrated" to Dubai when improperly seized by the Italian Trustee.

### b. The Debtor's Principal Assets are Deemed to Be Located in the United States and Possibly Elsewhere

62. The Debtor's principal assets consist of intellectual property, in large measure copyrights for software referred to as the Global and China IP. The China IP has significant value but will require further development, support, and enhancement before it will be fully marketable. The Debtor's Global IP was effectively transferred to Versata on October 7, 2010; however, the Debtor retained certain rights regarding marketing of the Global IP and the proposed settlement with Versata enhances those rights. Copyrights are local in nature and are located where they are utilized or registered. Software copyrights can't be held in your hand and aren't kept in a vault. They consist of a right to be utilized in a given country. A copyright may be valid in the United States and not valid in Belgium. There are agreements between countries relating to the registration of copyrights, but the concept of "location" of a copyright is a *non*

---

[22] *See Ran*, 607 F.3d at 1023; *British Am. Ins.*, 425 B.R. at 909; *Bear Stearns*, 374 B.R. at 128; *SPhinX*, 351 B.R. at 117.

*sequitur.* To the extent that a copyright is located anywhere, it could be deemed to be located in the United States at the Debtor's registered office or at its headquarters in the United States, not where the "source code" is located. An obsolete copy of the source code for software of think3 is located in Italy. The principal source code for the current version of the software to be utilized by the Debtor is located in Dubai. There are dozens of copies of the source code located in various locations across the globe.

63. The agreements of the Debtor with Versata remain as valuable property and give the Debtor rights to the current version of the source code. Those agreements were negotiated in the United States, by citizens of the United States, written in English, and executed by citizens of the United States. If the physical location of the documents is relevant, they are located in the United States. The only place where both the rights to the source code and the rights to use the copyright coexist for the Debtor is in the United States, not Italy.

64. The other significant asset of the Debtor is its Japanese Subsidiary ("KK"). Japan is not located in Italy and the ownership of KK is not located in Italy. The ownership of KK resides with the Debtor and was purchased by ESW along with ownership of the Debtor in the United States, as previously discussed. The principal assets of the Debtor are not located in Italy. They are in the United States.

> **c.** **The Presence of Creditors in Italy Does Not Outweigh the Totality of the Circumstance Weighing in Favor of the United States**

65. The location of a majority of the Debtor's creditors is just one factor. In *Ran*, the debtor's creditors (along with his principal assets) were all located in Israel. *Ran*, 607 F.3d at 1024. The bankruptcy court, the district court, and the Fifth Circuit, however, still found that the debtor's COMI was in the United States. *Id.*

66.	Prior to September of 2010, millions of dollars of claims against the Debtor were held by United States holders of funded debt, which were cancelled as part of the transfer to ESW.  To the extent that the Debtor can be successfully reorganized, ESW, located in the United States, is a party in interest.  In addition, the Italian government tax claim may not be allowable as a claim in the Chapter 11 Case pursuant to the "Revenue Rule," which provides that the courts of one country will not enforce tax judgments or claims of other countries.[23]  In *Pasquantino v. United States*, the U.S. Supreme Court recognized the revenue rule and noted favorably the Irish case of *Peter Buchanan Ltd.* v *McVey*,[24] where the Irish court held that a Scottish liquidator could not recover assets because the recovery would go to satisfy the company's Scottish tax obligations.  Consequently, the Italian Trustee cannot be afforded relief inconsistent with the revenue rule and any such relief would be prohibited by section 1529(1).

67.	The Italian government, through one of its agencies, is a petitioning creditor in the Italian Proceeding. Also, although Versata has yet to file a claim in the Chapter 11 Case, it is incurring significant damages on a daily basis that will constitute claims against the Debtor. Indeed, Versata may be the largest holder of allowed claims in the Chapter 11 Case.  The allegations in the Verified Petition regarding the Debtor's creditors do not establish the COMI of the Debtor in Italy.

68.	*Ran* and *British Am. Ins.* also acknowledged the importance of the debtor's COMI being ascertainable by third parties.  *Ran*, 607 F.3d at 1025-26; *British Am. Ins.*, 425 B.R. at 914; Case C-341/04, *Bondi v. Bank of Am., NA* (*In re Eurofood IFSC Ltd.*), 2006 E.C.R. 1-3813, ¶ 33 (E.C.J. May 2, 2006), *available at* http://curia.europa.eu/jcms/jcms/j_6/ (search by case number

---

[23] Pasquantino v. U.S., 544 U.S. 349, 361 (2005); *accord* Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc., 268 F.3d 103, 109, 134-35 (2nd Cir. 2002); Republic of Colombia v. Diageo N. Am. Inc., 531 F. Supp. 2d 365, 383- (E.D.N.Y. 2007).

[24] 1955 A. C. 516, 529-530 (Ir. H. Ct. 1950), *app. dism'd*, 1955 A. C. 530 (Ir. Sup. Ct. 1951).

"C-341/04", choose the "Judgment" dated "2006-05-02").  The Debtor dealt with third parties all over the world, specifically under the name of think3, and not an Italian name like pensare3.[25] Its contracts and its website stated that the headquarters of the Debtor were in the United States. The filing of the Italian Proceeding by a handful of Italian creditors, led by an arm of the Italian government, proves only that Italian creditors, other than the Italian government, may have been uninformed about a choice of venue in light of the size of the tax claim of the Italian government and the Revenue Rule.  The Italian Trustee has inflated the number of Italian creditors, as discussed above, and has not shown by a preponderance of the evidence that the COMI of the Debtor is in Italy.

### d.    *United States' Law Will Apply to Most Disputes*

69.    The primary dispute between the Debtor and the Italian Trustee revolves around the purported termination of the License Agreement with Versata and the settlement of claims arising from the Italian Trustee's actions.  The License Agreement contains a choice of law provision requiring that Texas law govern the agreement.  License Agreement, § 12 (attached hereto as **Exhibit E**).  Furthermore, the Debtor's corporate, financing, and substantially all other documents contain United States choice of law provisions and some even designate the United States as the choice of forum.  In addition, Versata has alleged that the products of the Debtor violate patents held by Versata which will be governed by United States law.  Most disputes involving the Debtor will be governed by United States law.

## B.    The Italian Trustee Should be Bound by the Rulings of the Italian Courts That the Headquarters of the Debtor Are in the United States

70.    The Italian Trustee should be precluded from arguing that the COMI is located in Italy.  Both the Italian Bankruptcy Court and the Italian Civil Court have determined the

---

[25] The Italian equivalent of "think3".

Debtor's registered office and main headquarters, respectively, are in the United States and that the Italian Proceeding is a secondary proceeding.

71.     The Italian Bankruptcy Court addressed the issue in the Italian Bankruptcy Judgment, where it discussed at length its reasoning regarding whether it had jurisdiction over the Debtor. *See* **Exhibit B**. Italian law provides that "[t]he entrepreneur, who maintains the principal office of the business abroad, may be declared bankrupt in the territory of the Republic even if the declaration of bankruptcy has been ruled abroad." **Exhibit B**. The Italian Bankruptcy Court explained that its statute means "the bankruptcy of the entrepreneur who has its registered office abroad can be declared in Italy only if it maintains a branch office, or at least a permanent representative office, in Italy." **Exhibit B**. The Italian Bankruptcy Court concluded that it had jurisdiction to judge the Debtor bankrupt because the Debtor "has a branch office in Italy." **Exhibit B**. Likewise, the Italian Civil Court, in response to the Italian Trustee's request for an injunction against Versata, entered the Injunction Ruling on July 26, 2011. The Injunction Ruling stated that the Debtor is "a company having the head office in Wilmington, 1209 Orange Street, County of Newcastle (USA) and the branch office in Italy." **Exhibit A**.

72.     Collateral Estoppel "precludes the relitigation of issues actually adjudicated, and essential to the judgment, in a prior suit between the parties on a different cause of action." *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 436 (5th Cir. 2000). Four conditions must be met before collateral estoppel may be applied to bar relitigation of an issue: (1) the issue under consideration is identical to that litigated in the prior action; (2) the issue was fully and vigorously litigated in the prior action; (3) the issue was necessary to support the judgment in the prior case; and (4) there is no special circumstance that would make it unfair to apply the doctrine. *Copeland v. Merrill Lynch & Co.*, 47 F.3d 1415, 1422 (5th Cir. 1995).

73.     The Italian Bankruptcy Judgment fulfills all four requirements to bar relitigation of the COMI issue.  Both Italian courts were required to determine the location of the Debtor's principal office.  Versata vigorously contested the Italian Trustee's request for an injunction in Italy and there are no special circumstances that would make it unfair for the Italian Trustee to be bound by rulings of Italian courts.  The Italian courts concluded that the Italian Proceeding is a secondary proceeding and that the headquarters of the Debtor is in the United States.  The Italian Trustee should not be permitted to take a position to the contrary.  The acquiescence by the Italian Trustee to these rulings and his affirmative introduction of these rulings in the Chapter 11 Case constitute the equivalent of a judicial admission by the Italian Trustee, which precludes his recognition as a foreign representative of a foreign main proceeding.

## C.     Recognition of the Italian Proceeding as a Foreign Main Proceeding Would be Manifestly Contrary to United States Public Policy

74.     The Court has the discretion to refuse to take any action under Chapter 15 if such action would be manifestly contrary to public policy.  11 U.S.C. § 1506.  Recognition of the Italian Proceeding as a foreign main proceeding would constitute acquiescence to the Italian Trustee's refusal to provide the Debtor with access to its books and records and the pleadings in the Italian proceeding.  It is difficult for the Debtor to refute the allegations of the Italian Trustee without such access.  The Italian Trustee should not be recognized under Chapter 15 if he is unwilling to play by the Chapter 15 rules.  Without access to the books, records, and court pleadings, the allegations of the Italian Trustee cannot be tested and his potential lack of good faith cannot be fully determined.[26]  The inability to comply with discovery rules does not excuse a litigant.  In *In re Anschuetz & Co., GmbH*, the Fifth Circuit stated:

---

[26] Although, the duplicity of the Italian Trustee, in connection with his filing of a request to provide records to the Debtor while simultaneously supporting a denial of that request, is evidence of bad faith.

It is not *ipso facto* a defense to a discovery request that the law of a foreign country may prohibit production or disclosure. As the Eleventh Circuit held in *United States v. Bank of Nova Scotia*, even at the sanction stage, violation of foreign law is not necessarily a valid defense to a lawfully issued subpoena for documents. . . .

If the foreign law has in fact prevented the litigant from providing the information despite a United States court order, the good faith of the discovered party is relevant to the sanctions that may be imposed for noncompliance with the court order, but this does not detract from the authority of the court to order such discovery to take place.

*In re Anschuetz & Co., GmbH*, 754 F.2d 602, 614 n.29 (5th Cir. 1985) (citations omitted).

75. Even the threat of foreign criminal prosecution has been held not to be an excuse for non compliance with discovery rules. In *Soletanche & Rodio, Inc. v. Brown & Lambrecht Earth Movers, Inc.*, the court encountered an American corporation that brought a patent infringement suit. *Soletanche & Rodio, Inc. v. Brown & Lambrecht Earth Movers, Inc.*, 99 F.R.D. 269, 270 (N.D. Ill. 1983). The court found that the potential hardship imposed on the plaintiff regarding producing discovery did not outweigh "the interests advanced by requiring plaintiff to provide the requested information. Violation of this French law could result in a short prison sentence and a fine . . . ." *Id.* at 271. While the court stated that it was simply requiring the plaintiff to try to obtain appropriate waivers, "[i]n the event that the French government denies the waiver request, we would still require plaintiff to supply the necessary information. As stated earlier, the interest of United States courts in not enforcing invalid patents outweighs the potential penalties the French Solentanches might suffer in complying with our order." *Id.* at 271.

76. This concept has been recognized in the Fifth Circuit. In *United States v. Field* (*In re Grand Jury Proceedings*), the Fifth Circuit encountered an alien bank officer who was subpoenaed by the grand jury to answer questions regarding tax evasion by bank clients but refused to answer based on the secrecy laws of the Cayman Islands. *U.S. v. Field* (*In re Grand*

*Jury Proceedings*), 532 F.2d 404, 405-06 (5th Cir. 1976). The Fifth Circuit affirmed the district court, and found that the bank officer was properly subject to contempt penalties, notwithstanding the district court's belief that he would "be exposed to some criminal charges and some criminal punishment for violating the Cayman Bank Secrecy Act." *Id.* at 406.

77.     If the Italian Trustee cannot comply with the United States discovery rules he cannot bear his burden of proof and this Court should conclude that the COMI of the Debtor is in the United States. Although the Italian Trustee has indicated that he will not introduce evidence, precluding the Debtor from obtaining the books, records, and pleadings necessary to refute the allegations of the Italian Trustee places the Debtor at an unconscionable disadvantage and is evidence of the bad faith of the Italian Trustee. Initiating a Chapter 15 case and then attempting to walk away from the case in search of a more favorable forum after the Debtor and others have incurred significant expense should not be condoned and its endorsement by this Court would be manifestly contrary to the public policy of the United States.

78.     Recognition would also constitute approval of the Italian Trustee's unilateral termination of the License Agreement with Versata without providing the protection to Versata required by section 365(n) of the Bankruptcy Code,[27] the Italian Trustee's violations of the Chapter 11 automatic stay,[28] the actions of the Italian Trustee that have exceeded his authority under Italian law, and the threats of criminal prosecution of the officers of the Debtor and its CRO. Endorsement of such actions by recognition of the Italian Trustee as the foreign representative of a foreign main proceeding would be manifestly contrary to public policy.

---

[27] Which would be inconsistent with section 1529(1) of the Bankruptcy Code.

[28] Actions taken by the Italian Trustee regarding assets of the Debtor outside of Italy, and possibly within Italy, violate section 362 of the Bankruptcy Code as actions to obtain possession of and control property of the estate of the Debtor.

79.     Italian law seemingly allows a trustee to unilaterally terminate an executory contract of any nature.  Here, the Italian Trustee purports to have done exactly that with the License Agreement, notwithstanding that the License Agreement is controlled by United States law and is an exclusive license of the right for Versata to use the Debtor's intellectual property.  Under United States law, the License Agreement constituted a transfer of the intellectual property from the Debtor to Versata.[29]  The rejection of such an agreement is subject to court approval and provides special remedies for the licensee subject to a rejected license, including retaining the use of the intellectual property.  11 U.S.C. § 365.  Since the actions of the Italian Trustee purportedly *terminate* the License Agreement, reconciliation of the ruling in the Italian Proceeding with section 365(n) in compliance with section 1529(1) is effectively impossible.  In light of section 365(n) and the public policy concerns resulting from the erroneously decided case of *In re Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.* (*In re Richmond Metal Finishers, Inc.*), which led to the adoption of section 365(n), the Court should find that recognition of the Italian Proceeding as a foreign main proceeding will be manifestly contrary to public policy.[30]  *See Lubrizol Enters., Inc. v. Richmond Metal Finishers, Inc.* (*In re Richmond Metal Finishers, Inc.*), 756 F.2d 1043, 1048 (4th Cir. 1985).

80.     Additionally, the *In re Gold & Honey, Ltd.* case is instructive.  *In re Gold & Honey, Ltd.*, 410 B.R 357 (Bankr. E.D.N.Y. 2009).  The facts before the court in *Gold & Honey*

---

[29] The Status Conference Statement filed by Versata contains a more detailed explanation of why the License Agreement transferred the intellectual property from the Debtor to Versata.  Again, the Debtor will not require this Court to read the explanation twice.

[30] A similar argument was made in *Micron Tech., Inc. v. Qimonda AG* (*In re Qimonda AG Bankr. Litig.*), 433 B.R. 547 (E.D. Va. 2010).  In *Qimonda*, a dispute arose over the bankruptcy court's order under section 1521 of the Bankruptcy Code that allowed the foreign representative to terminate intellectual property license agreements under German insolvency law section 103 or under Bankruptcy Code section 365, but only applied section 365(n)'s protections if the foreign representative opted to terminate under section 365.  *Id.* at 570-71.  The district court reviewed and remanded the issue to the bankruptcy court to determine whether conditionally applying section 365(n) would be manifestly contrary to public policy.  *Id.*  No subsequent opinion ruling on the matter has been published.

are similar to those before this Court. *See id.*. at 359-65. Following the seizure of some of the debtors' assets and the commencement of an Israeli receivership proceeding, the debtors filed for Chapter 11 relief. *Id.* at 362-63. Despite the application of the automatic stay, the lender continued to pursue a receivership in Israel, and eventually obtained the appointment of receivers, who subsequently filed Chapter 15 petitions in the United States. *Id.* The *Gold & Honey* court refused to recognize the Israeli receivers' petitions because they were appointed in violation of the automatic stay. *Id.* at 372-73. The court explained that acquiescing to a creditor's offensive violation of the automatic stay would "ensue in derogation of fundamental United States policies." *Id.*

81.     Here, while the Italian Trustee was appointed before the automatic stay of the Chapter 11 Case, he has continued to violate the laws of the United States, including the automatic stay, by exceeding the limits of his authority under Italian law. Following the imposition of the automatic stay in the Chapter 11 Case, the Italian Trustee has continued to interfere with the Debtor's business affairs and restructuring efforts outside of Italy. The Italian Trustee has exceeded his lawful authority by commandeering United States websites, intercepting non-Italian receivables of the Debtor, threatening the management of the Debtor and its CRO, refusing (or being unable) to comply with discovery rules, and interfering with the Debtor's valuable contract rights.

82.     Perhaps more troubling, the Debtor recently learned that someone in Italy on a server registered to the Italian Branch, presumably under the control of the Italian Trustee, has hacked into Versata's computer system. The purpose and intent of the hacking incident is unknown to the Debtor. Versata has alleged that the hacker intended to interfere with Versata's customers. Similar activities were recently addressed by Judge Gropper in *In re Toft*, Case No.

11-11049 (ALG), 2011 Bankr. LEXIS 2733 (Bankr. S.D.N.Y. July 22, 2011), where a German administrator in a foreign main proceeding had obtained orders from German and English courts allowing the administrator to intercept e-mails of the debtor who had fled Germany. The German administrator filed a Chapter 15 petition in the United States seeking a similar ruling since certain e-mail providers to the debtor were located in the United States. Judge Gropper denied the request noting that the request of the administrator might constitute a violation of United States wiretap laws.

83.     The actions of the Italian Trustee should not be condoned by this Court and are manifestly contrary to United States public policy. This Court should not acquiesce to such abusive conduct, should conclude that the COMI of the Debtor is in the United States, and should deny recognition of the Italian Proceedings as manifestly contrary to public policy.

## V. Conclusion

84.     The Italian Trustee has not carried his burden to prove the Debtor's COMI is located in Italy by a preponderance of the evidence. In fact, the overwhelming weight of the evidence favors a finding that the Debtor's COMI is firmly located in the United States. Moreover, granting recognition to the Italian Trustee as the representative of a foreign main proceeding while the Italian Trustee has continued not only to be uncooperative but to take affirmative actions in violation of both United States and Italian law would be manifestly contrary to public policy and would constitute judicial acquiescence to the Italian Trustee's refusal to cooperate with the standard American legal process. The Court, therefore, should deny the Italian Proceeding the status of a foreign main proceeding and deny the Italian Trustee's Verified Petition in its entirety.

**WHEREFORE, PREMISES CONSIDERED**, the Debtor respectfully requests that this Court enter an order (i) denying the relief requested in the Verified Petition in all respects, and (ii) granting such other and further relief to which the Debtor is justly entitled.

Dated: September 6, 2011

Respectfully submitted,

**HAYNES AND BOONE, LLP**

_____/s/ Charles A. Beckham, Jr._____
Charles A. Beckham, Jr.
Texas Bar No. 02016600
Brooks Hamilton
Texas Bar No. 24046015
Kelli M. Stephenson
Texas Bar No. 24070678
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
Telephone (713) 547-2000
Facsimile (713) 547-2600

– and –

Robin E. Phelan
Texas Bar No. 15903000
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone (214) 651-5000
Facsimile (214) 651-5940

**COUNSEL TO DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing pleading was served via first class United States mail, postage prepaid and properly addressed, to those individuals or entities appearing on the Master Service List dated September 2, 2011 on the 6th day of September, 2011.

/s/ Brooks Hamilton
Brooks Hamilton

## SERVICE LIST

**Debtor**

think3, Inc.
Attn: Rebecca A. Roof
6011 W. Courtyard Dr.
Austin, TX 78730
Email: broof@alixpartners.com
Facsimile: 212-490-1344

**Debtor's Counsel**

Haynes and Boone, LLP
Attn: Charles A. Beckham, Jr.
Attn: Brooks Hamilton
1 Houston Center
1221 McKinney, Suite 2100
Houston, TX 77010
Email: charles.beckham@haynesboone.com
Email: brooks.hamilton@haynesboone.com
Facsimile: 713-547-2600

**Debtor's Special Counsel**

Bonelli Erede Pappalardo Studio Legale
Attn: Vittorio Lupoli
Attn: Sara Piccardo
Via delle Casaccie, 1
16121 Genova
Italy
Facsimile: 39 010 813849
Email: vittorio.lupoli@beplex.com
Email: sara..piccardo@beplex.com

Federico Cornia
Studio Legale Cornia
Via Garibaldi n. 3
40124 Bologna
Italy
Email: cornialex@studiolegalecornia.it
Facsimile: 39 051 232668

**Debtor's Crisis Managers**

Think3, Inc.
c/o AlixPartners
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201

**U.S. Trustee**

Office of the United States Trustee
903 San Jacinto, Suite 230
Austin, TX 78701
Facsimile: 512-916-5331

**Counsel to Gensym Cayman, L.P., Versata FZ-LLC, Versata Development Group, Inc., Versata Software, Inc., and ESW Capital, LLC**

Morrison & Foerster LLP
Attn: Larry Engel
Attn: Vincent Novak
Attn: Kristin Hiensch
425 Market Street
San Francisco, CA 94105
Email: lengel@mofo.com
Email: vnovak@mofo.com
Email: khiensch@mofo.com
Facsimile: 415-268-7522

Fulbright & Jaworski, L.L.P.
Attn: Berry D. Spears
Attn: Anna Maria Mendez
600 Congress Avenue, Suite 2400
Austin, Texas 78701-2878
E-mail: bspears@fulbright.com
Email: amendez@fulbright.com
Facsimile: 512-536-4598

**Italian Trustee**

Dr. Andrea Ferri
Studio Ferri & Associati
Via D'Azeglio 19
40123 Bologna
Italy
Email:  studio@studioferri.it
Email:  andreaferri@studioferri.it
Facsimile:  051/270313

Dr. Andrea Ferri
c/o Galletti, Ricciardello and Partners
Attn:  Mr. Edgardo Ricciarello
Via F. Baracca, n. 3
40133 Bologna
Italy
Email:  info@grplaw.it

**US Counsel to Italian Trustee**

Joel M. Walker
Joseph T. Moran
Duane Morris LLP
600 Grant Street, Suite 5010
Pittsburgh, PA  15219-2811
Email:  jmwalker@duanemorris.com
Email:  jmoran@duanemorris.com
Facsimile:  412-497-1001
Facsimile:  412-202-3985

**Equity Interest Holder**

ESW Capital LLC
6011 W. Courtyard Dr.
Austin, TX 78730

**Governmental and Taxing Authorities**

 Internal Revenue Service
STOP #5022AUS
300 E. 8th St.
Austin, TX 78701

Texas Comptroller of Public Accounts
Revenue Accounting Division - Bankruptcy Section
P.O. Box 13528
Austin, TX  78711

Texas Workforce Commission
Bankruptcy Section
P.O. Box 149080
Austin, TX 78714

Department of the Treasury
Internal Revenue Service
Cincinnati, OH 45999-0039

Illinois Department of Employment Security
Northern Region
260 East Indian Trail Rd.
Aurora, IL 60505-1733

Illinois Department of Employment Security
5608 West 75th Place
Burbank, IL 60459-3200

Ohio Attorney General
POBox 89471
Cleveland, OH 44101-6471

State of Illinois
Department of Employment Security
33 South Street
Chicago, IL 60603-2802

Illinois Department of Revenue
POBox 19447
Springfield, IL 62794-9447

Social Security Administration
Data Operations Center
Wilkes-Barre, PA 18769-0001

Equitalia
Patrizio Fiacco, Agente della Riscossione - Bologna
Equitalia Polis SpA
Via D. Svampa, 11
40129 Bologna
Italy
Email: patrizio.fiacco@equitaliapolis.com

Michigan Dept. of Treasury
Lansing, MI 48930

**Insurance Companies**

Arch Capital Group Ltd.
Wessex House, 4th Floor
45 Reid Street
Hamilton, HM 12
Bermuda

The Chubb Corporation
15 Mountain View Road
PO Box 1615
Warren, NJ 07059

The Navigators Group, Inc.
One Penn Plaza
New York, NY 10119

**Banks**

Comerica Bank
Comerica Bank Tower
1717 Main Street
Dallas, TX 75201

Silicon Valley Bank
3003 Tasman Drive
Santa Clara, CA 95054

UniCredit S.p.A.
Piazza Cordusio
20123 Milan
Italy
Email: info@unicredit.eu

Banca IMI
Largo Mattioli, 3
20121 Milan
Italy
Email: info@bancaimi.com

**Twenty Largest Unsecured Creditors**

Equitalia Polis SpA
Via D. Svampa, 11
40129 Bologna
Italy
Email: patrizio.fiacco@equitaliapolis.com

think3 SRL
Attn: Massimiliano Magagnoli
Studio Magagnoli
Via M. D'Azeglio 48
40123 Bologna
Italy
Email: m.magagnoli@studiomagagnoli.it

Think3 Designs Private Limited
3rd Floor, AKEMPS
28, 3rd Main, 1st Cross
Ashwini Layout
Ejipura
Bangalore 560 047
India

Think3, GmbH
c/o Miguel Grosser
Jaffe
Franz-Joseph-Strasse 8
D-80801 Munich
Germany

Bologna Group SpA
Piazza San Domenico 9
40124 Bologna, Italy

think3 K.K.
Attn: Katsuhiro Kojima
c/o Artemis International K.K.
4, Koji-machi 2-chome,
Chiyoda-ku, Tokyo 102-0083
Japanÿ
Email: katsuhira.kojima@think3.eu

Think3, SARL
c/o Patrick-Paul Dubois
32 Rue Moliere
69006 Lyon
France
Email: etude-p-p.dubois@pp-dubois.com
Facsimile: 04.72.75.49.60

La Torre SRL
Via Gabriele Colombo, 28
20050 Camparada (MB)
Italy

Siemens Ltd.
Wittelsbacherplatz 2
8033 Munich
Germany

Axus Italiana SRL
Via Cesare Giulio Viola 74
Roma, I-00148
Italy

KOSME s.r.l.
Via dell'Artigianato, 5
46048 Roverbella (Mantova)
Italy

Vision Consultants Limited
(address unknown)

Dell SA
Attn: General Counsel/Bankruptcy
One Dell Way
Round Rock, TX 78682

Versata Enterprises, Inc.
6011 W. Courtyard Drive
Austin, TX 78730

ITI -International Technegroup, Inc.
5303 DuPont Circle
Milford, OH 45150
Email: info@iti-global.com

Exergia Energia & Gas S.P.A.
C.so Sempione, 15a
21013 Gallarate
Italy

Cidielle Service SRL
19, v. Grada Grada
40122 Bologna (BO)
Italy

Studio Legale TommasoTommesani
Via De Poeti, n. 5
40124 Bologna
Italy
Email:  st.leg.tommesani@alinet.it

Vodafone Omnitel N.V.
Via Caboto, 15
20094 Corsico, Milano
Italy

Versata FZ LLC
Attn: Andrew E. Monarch
Morrison & Foerster, LLP
425 Market Street
San Francisco, CA 94105

Versata FZ LLC
Attn: Patton G. Lochridge
Attn: Travis C. Barton
McGinnis Lochridge & Kilgore, LLP
600 Congress Ave, Suite 2100
Austin, TX 78701

**Parties Requesting Notice**

McGinnis Lochridge & Kilgore, LLP
Attn: Brian T. Thompson
600 Congress Ave, Suite 2100
Austin, TX 78701
Email: bthompson@mcginnislaw.com

Andrea Clark Smith
PriceWaterhouseCoopers LLP
225 South Sixth Street, Suite 1400
Minneapolis, MN 55402
Email:  andrea.clark.smith@us.pwc.com

Narasappa, Doraswamy & Raja
62/1 Palace Road Cross
Vasanthnagar
Bangalore 560052
India
Email:  mrinal@narasappa.com