

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 12, 2011.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**
_____

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In re: | § § | Case No. 11-11925-HCM |
| THINK3 INC., | § § | Chapter 15 |
| Debtor in a Foreign Proceeding | § § | |

**ORDER DENYING RECOGNITION OF ITALIAN PROCEEDING**
**AS A FOREIGN PROCEEDING AND DISMISSING CHAPTER 15 CASE**

On September 8 and 9, 2011, in Austin, Texas, United States of America, this Court conducted a public and full evidentiary hearing on (1) the Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief (the "Verified Petition") filed by Dr. Andrea Ferri (the "Italian Trustee") on August 1, 2011 (dkt no. 1), which seeks (i) recognition as the foreign representative and (ii) recognition of the judicial proceeding case no. 69/11 (the "Italian Proceeding") under Italian law currently pending before the Court of Bologna, Italy ("Italian Bankruptcy Court") as the foreign main proceeding; (2) the Notice of Withdrawal of Chapter 15 Petition and Request for Recognition (the "Notice of Withdrawal") filed by the Italian Trustee on

August 29, 2011 (dkt no. 24) which seeks to withdraw the Verified Petition without a court order; (3) the Debtor's Objection to (I) Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief and (II) Notice of Withdrawal of Chapter 15 Petition and Request for Recognition (the "Debtor's Objection") filed by Think3 Inc., as debtor in case no. 11-11252-hcm pending in this Court (the "Debtor") (dkt no. 46), which objects to (i) the withdrawal of the Verified Petition, and (ii) the recognition of Italian Proceeding as a foreign main proceeding; (4) the Objection of the Settling Creditors to Italian Trustee's Notice of Withdrawal of Chapter 15 Petition and Request for Recognition (the "Settling Creditors' Objection") filed by Versata FZ-LLC and related entities (the "Settling Creditors") (dkt no. 39), which objects to the dismissal of the Verified Petition; (5) Opposition of Settling Creditors to Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief (the "Settling Creditors' Opposition") filed by the Settling Creditors (dkt no. 40), which objects to (i) the recognition of the Italian Trustee and (ii) other relief requested; (6) Foreign Representative Statement in Reply ("Reply") filed by the Italian Trustee on September 7, 2011 (dkt no. 60); and (7) dismissal of this Chapter 15 Case set by order of this Court. Following the hearing, and after carefully considering and reviewing the evidence, record, exhibits, pleadings, record in this case, and the applicable law, this Court finds as follows: [1]

---

[1] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure. To the extent any of the findings of fact herein constitute conclusions of law, they are adopted as such. To the extent any of the conclusions of law herein constitute findings of fact, they are adopted as such.

**Findings of Fact**

A.      This Court has jurisdiction over the matters raised in the Verified Petition and Notice of Withdrawal pursuant to 28 U.S.C. §§ 157 and 1334, and it is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(P).

B.      Venue is proper before this Court pursuant to 28 U.S.C. §1410(1) or (2).

C.      Adequate, sufficient and reasonable notice of the Verified Petition, the Notice of Withdrawal, dismissal of this Chapter 15 Case, Debtor's Objection, the Settling Creditors' Objection and Opposition, the relief sought thereby and the hearing thereon, was provided to the Italian Trustee, creditors of the Debtor and all other parties in interest under Rules 1017(a), 2002(p), 9006(c), 9007, and all other applicable Rules of the Federal Rules of Bankruptcy Procedure and the U.S. Bankruptcy Code.

D.      Although the Italian Trustee did not physically appear at the hearing on September 8 and 9, 2011, the hearing was not *ex parte* because the Italian Trustee was well aware of the hearing (which was set by this Court on August 2, 2011 and extended at the request of the parties, including the Italian Trustee, to September 8 and 9, 2011). Further, the Italian Trustee submitted himself to the jurisdiction of this Court by filing, among other things, the Verified Petition, the Notice of Withdrawal, and the Reply, appearing and participating in multiple other hearings before this Court in this Chapter 15 Case, and availing himself of the process of this Court.

E.      This Court has and maintains jurisdiction over the Italian Trustee and the Verified Petition, notwithstanding the Notice of Withdrawal. The Italian Trustee initiated this Chapter 15 Case by filing the Verified Petition and seeking related relief from this Court. The Debtor and Settling Creditors have spent tremendous amounts of time, effort

and expense preparing for the hearing on the Verified Petition filed by the Italian Trustee, including preparing for significant discovery requested by the Italian Trustee.

F.      Since the Italian Trustee commenced this Chapter 15 Case by filing the Verified Petition, appeared in the Chapter 11 Case no. 11-11252 of the Debtor ("Chapter 11 Case"), and was sued and served by the Debtor and Versata in adversary proceedings in this Court,  the Italian Trustee remains subject to this Court's jurisdiction notwithstanding his filing of the Notice of Withdrawal or the ultimate disposition of the Chapter 15 Case.

G.      Think3 Inc. (herein "Debtor") is a Delaware corporation that maintained its registered office and agent, The Corporation Trust Company, at 1209 Orange Street, City of Wilmington, County of Newcastle, Delaware, 19801, United States of America, as of the date of filing of the Verified Petition and initiation of the Italian Proceeding.

H.      The Debtor is a global company operating a business concerning computer-aided design and product lifestyle management software, which has been managed from its United States of America headquarters since 1997 and through the date of the filing of the Verified Petition and initiation of the Italian Proceeding.

I.      The Debtor's management has been located in the United States of America since 1997, and over the past decade, the Debtor's world headquarters have been located at (1) 2880 Lakeside Drive, Suite 250, Santa Clara, California 95054, United States of America; (2) 6160 Stoneridge Mall Rd., Suite 280, Pleasanton, California 94588, United States of America; (3) 312 Walnut Street, Suite 2470, Cincinnati, Ohio 45202, United States of America; and (4) 7723 Tylers Place Blvd., Suite 106, West Chester, Ohio 45069, United States of America. The Debtor's world headquarters are located at 6011 West Courtyard Drive, Austin, Texas 78730 United

States of America, as of the date of filing of the Verified Petition and the initiation of the Italian Proceeding.

J.      The Debtor and its subsidiaries have kept other offices in (1) Bologna, Italy, which was referred to as the "European HQ" or a "branch office"; (2) Tokyo, Japan; (3) Bangalore, India; (4) Beijing, China; (5) Germany; (6) France; and (7) Chicago, United States of America.

K.      A majority of the Debtor's board meetings have been held in the United States of America, where the Debtor's executive decisions were made and its administrative nerve center is located, as of the date of the filing the Verified Petition and the initiation of the Italian Proceeding.

L.      The Debtor has filed tax returns in the United States of America and its State of California, maintained bank accounts in the United States of America, employed accounting and law firms located in the United States of America, and the overwhelming source of the funding of the Debtor has come from sources within the United States of America that would not have provided financing to, and in some cases were prevented from financing, a non-U.S. entity.

M.      The Debtor engaged United States legal and tax professionals, not Italian professionals, for significant business activities.

N.      Substantially all of the Debtor's contracts were entered into in English, not Italian, and contained choice of law, and often venue, provisions of the United States of America.

O.      Most disputes involving the Debtor will likely be governed by the laws of the United States of America.

P.     The Debtor's executive officers have primarily consisted of United States citizens and all of its officers and directors have been based in the United States of America since September of 2010 through the date of the filing of the Verified Petition and initiation of the Italian Proceeding.

Q.     The Debtor was purchased by ESW Capital, LLC ("ESW"), an American company, on September 28, 2010, and moved its headquarters from the State of Ohio, United States of America, to the State of Texas, United States of America. The Debtor's headquarters were located in the State of Texas, United States of America, as of the date of filing the Verified Petition and initiation of the Italian Proceeding.

R.     The purchase of the Debtor by ESW was negotiated in the United States of America by United States parties represented by United States counsel pursuant to documents that provided for United States of America choice of law and jurisdiction of United States courts, and those documents are located in the United States of America as of the date of the filing of the Verified Petition and initiation of the Italian Proceeding.

S.     The Debtor was represented to ESW to be a United States business.

T.     Rebecca A. Roof is the Debtor's independent and court-approved President and Chief Restructuring Officer ("CRO"), and Andrew Price has been the sole Director of the Debtor since September of 2010, and both are located and reside in the United States of America as of the date of the filing of the Verified Petition.

U.     The Debtor's principal assets are its China intellectual property ("IP") and its ownership interest in a Japanese Subsidiary, and are located in the United States of America as of the date of the filing of the Verified Petition and initiation of the Italian Proceeding.

V.      The Debtor's rights in the Global IP, if it retains any as of the date of the Verified Petition and initiation of the Italian Proceeding, are subject of a License Agreement with Versata, which is controlled by United States law and the laws of the State of Texas in the United States of America.

W.      Subsequent to the purchase of the Debtor by ESW, all significant management and executive decisions of the Debtor were performed in the United States of America and the activities of the Italian branch of the Debtor were limited to negotiations with local creditors and collection of local revenue, as of the date of the filing of the Verified Petition and initiation of the Italian Proceeding.

X.      The existence of employees of the Debtor in Italy is but one factor to be considered by this Court, and is not determinative.

Y.      The schedules filed by the Debtor reflect that many of its creditors are in Italy, but that is but one factor to be considered by this Court and is not determinative. Furthermore, no creditor of the Debtor located in Italy, despite having proper notice of the hearing and the Verified Petition, appeared or supported or filed documents in support of the Verified Petition. The only creditors of the Debtor that appeared in this Chapter 15 Case were creditors which opposed the Verified Petition.  Further, the Italian Trustee has purported to terminate the License Agreement of the Debtor with Versata without providing Versata with the protections of a licensee provided by  §365(n) of the U.S. Bankruptcy Code, making Versata one of the largest creditors of the Debtor. Versata, which is a major creditor of the Debtor, is not located in Italy, utilizes counsel and representatives located in the United States of America, and opposes the Verified Petition.

Z.      Several factors that are objective and readily ascertainable by third parties demonstrate that the Debtor is a United States company with its principal place of business and headquarters in the United States of America (not Italy), including that the Debtor presented itself to third parties (including creditors and customers) as "Think3" (American English), and not  "pensare3" (Italian), and publicly listed its headquarters as being in the United States of America (not Italy) on websites and publicly filed and available documents, through the date of the filing of the Verified Petition and initiation of the Italian Proceeding.

AA.     The Debtor's office in Italy is a secondary office, commonly referred to as a branch office (including by the Italian Court), as of the date of the filing of the Verified Petition and initiation of the Italian Proceeding.

BB.     The Italian Bankruptcy Court has determined that the Debtor maintained a secondary office in Italy.

CC.     It appears that under Italian law, the Italian Trustee only has authority over the Debtor's secondary office in Italy and any assets that are located in Italy, and the authority of the Italian Trustee currently does not extend beyond Italy.

DD.     The Italian Trustee was appointed by the Italian Bankruptcy Court on April 14, 2011, following the Italian Bankruptcy Court's declaration of bankruptcy of the Debtor pursuant to involuntary petitions filed by certain Italian creditors in Italy.

EE.     The Debtor maintains its books and records in several places, including the United States of America and Italy, as of the date of the filing of the Verified Petition and initiation of the Italian Proceeding.

FF.     The Debtor and its independent CRO in the Chapter 11 Case have not been allowed access to those books and records located in Italy because the Italian

Trustee has effectively blocked their access to those books and records through the Italian Proceeding.

GG.     The Italian Trustee refused repeated requests to provide the Debtor and its independent CRO with access to its books and records and the pleadings in the Italian Proceeding, and the Debtor and its independent CRO have been denied access to large portions of the Italian Bankruptcy Court files, including the Italian Trustee's reports.

HH.     The Debtor through its independent CRO has repeatedly attempted, unsuccessfully to date, to coordinate and cooperate with the Italian Trustee with respect to the Chapter 15 Case, the Chapter 11 Case, and the Italian Proceeding. Notwithstanding the ultimate disposition of this Chapter 15 Case, this Court will continue to require attempts to continue coordination and cooperation between the Debtor through its independent and court-approved CRO in the Chapter 11 Case and the Italian Trustee in the Italian Proceedings, while keeping in mind that it takes two sides to actually accomplish coordination and cooperation.

II.     The Italian Trustee appears to have reported Ms. Roof to the Italian authorities for prosecution under Italian criminal law for her actions and attempts to fulfill her duties as the independent court-approved CRO of the Debtor that are mandated by the U.S. Bankruptcy Code.

JJ.     In reference to the Chapter 11 Case, the Debtor has been recognized by the Japanese court as the foreign representative of a foreign proceeding.

KK.     Prior to the hearing, the Italian Trustee withdrew the Declaration of the Italian Trustee and the Declaration of Italian Counsel that supported the Verified Petition (dkt nos.1, 24).

LL.    It would increase the expense and loss to creditors of the Debtor, and be manifestly unfair to the Debtor, its creditors, and customers, for this Court to avoid a determination on the merits of which of the Debtor's insolvency proceedings is the "main proceeding" and whether the Italian Proceeding is a "foreign main proceeding" of the Debtor, merely because the Italian Trustee chose to attempt to withdraw the Verified Petition (without leave of Court) just before the scheduled hearing on the Verified Petition. According to the testimony at the hearing by Professor Jay L. Westbrook (a preeminent scholar in cross-border insolvency cases and the co-head of the United States delegation to the United Nations Commission on International Trade Law (UNCITRAL), which developed the Model Law on Cross-Border Insolvency adopted in the U.S. Bankruptcy Code as Chapter 15)---there is a concern that "a foreign representative (here the Italian Trustee) could file a petition for recognition (here the Verified Petition) and then, upon seeing difficulties in obtaining recognition, might be permitted to withdraw the petition only to seek similar recognition in another forum more friendly to its claims. Forum shopping is a constant and inherent problem in international insolvency and permitting that sort of 'hit and run' behavior may exacerbate the problem…I do not wish to suggest any bad faith on the part of the Italian trustee in this case, but only to express a serious concern about the effect of permitting withdrawal (of the Verified Petition)…..resolution of the main proceeding issue (regarding the Debtor Think3 Inc.) in the United States would greatly reduce the expense and loss to creditors of a continued multinational struggle over recognition…the ruling of an American court would be strongly influential" in many other jurisdictions.

**Conclusions of Law**

1.      Chapter 15 of the U.S. Bankruptcy Code (11 U.S.C. §§1501-1532) incorporates the Model Law on Cross-Border Insolvency ("Model Law") drafted by UNCITRAL  (the United Nations Commission on International Trade Law), which in turn, is based upon the European Union Convention on Insolvency Proceedings ("EU Convention"). The Model Law has been adopted by numerous countries, including the United States of America through enactment of Chapter 15 of the U.S. Bankruptcy Code. Chapter 15 of the U.S. Bankruptcy Code was designed to provide effective mechanisms for dealing with cases dealing with cross-border insolvency. 11 U.S.C. §1501.

2.      11 U.S.C. §1517(c) of the U.S. Bankruptcy Code requires that the Verified Petition filed by the Italian Trustee on August 1, 2011 be decided by this Court at the "earliest possible time".  Consistent with such directive, this Court set a hearing on the Verified Petition, and directed the method of notice of the hearing on the Verified Petition by Order entered on August 2, 2011 (dkt no. 2).  The hearing on the Verified Petition was reset to September 8 and 9, 2011 at the request of the Italian Trustee, the Debtor and other creditors (dkt no. 18).

3.      Under 11 U.S.C. §101(23), a "foreign proceeding" is defined in the U.S. Bankruptcy Code as "a collective judicial or administrative proceeding in a foreign country".

4.      Under 11 U.S.C. § 1502(4), a "foreign main proceeding" is defined in the U.S. Bankruptcy Code as "a foreign proceeding pending in the country where the debtor has the center of its main interests"  (herein "COMI").

5.      Under 11 U.S.C. §1502(2), (5), a "foreign nonmain proceeding" is defined in the U.S. Bankruptcy Code as any foreign proceeding, other than the foreign main proceeding, pending in a country where the debtor has a place of operation where it "carries out a nontransitory economic activity".

6.      Here, the center of main interests (COMI) of the Debtor Think3 Inc. is in the United States of America (not Italy), under tests recognized by the courts.

7.      First, the U.S. Fifth Circuit Court of Appeals recently utilized a "totality of circumstances" test and recognized the following list of non-exhaustive factors to be considered when a debtor's COMI is in dispute: (i) the location of the debtor's headquarters; (ii) the location of those who actually manage the debtor (which, conceivably could be the headquarters of a holding company); (iii) the location of the debtor's primary assets; (iv) the location of the majority of the debtor's creditors or a majority of the creditors who would be affected by the case; and/or (v) the jurisdiction whose law would apply to most disputes. *Lavie v. Ran (In re Ran)*, 607 F.3d 1017, 1023 (5th Cir. 2010)(citing *In Re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr.S.D.N.Y. 2006) *aff'd,* 371 B.R. 10 (S.D.N.Y. 2007)). Here, considering these factors and the totality of circumstances, the evidence at the hearing established that the COMI of the Debtor Think3 Inc. is in the United States of America, not Italy.

8.      Second, courts have often equated a corporate debtor's COMI with the debtor's "principal place of business". *See e.g.*, *In re Basis Yield Alpha Fund (Master),* 381 B.R. 37 (Bankr. S.D.N.Y. 2008); *Tri-Continental Exchange Ltd.*, 349 B.R. 627 (Bankr. E.D. Cal. 2006). Recently, the U.S. Supreme Court held that a corporation's "principal place of business" is the place where a corporation's officers direct, control, and coordinate the corporation's activities, otherwise known as its "nerve center". *Hertz*

*Corp. v. Friend*, 130 S.Ct. 1181 (2010). Following the *Hertz* decision, the District Court for this District (Western District of Texas) considered the following factors for determining a corporation's "nerve center": (i) location of corporate and executive offices; (ii) the site where day-to-day control is exercised; (iii) the exclusivity of decision making at the executive office and the amount of managerial authority at that location; (iv) the location where corporate records and bank accounts are kept; (v) where the board of directors and stockholders meet; (vi) where executives live, have their offices, and spend their time; (vii) the location where corporate income tax is filed; (viii) the location designated in the corporate charter; and (ix) the location where major policy, advertising, distribution, accounts receivable departments and finance decisions originate. *Guitar Holding Co. v. El Paso Natural Gas Co.*, 2010 WL 3338550 *3 (W.D. Tex. 2010). Here, under the "principal place of business" and "nerve center" test, the evidence at the hearing established that the COMI of the Debtor Think3 Inc. is in the United States of America (not Italy).

9. Third, Chapter 15 of the U.S. Bankruptcy Code provides "in interpreting this chapter, the court shall consider its international origin, and the need to promote an application of this that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C. §1508. According to the European Court of Justice, in determining the "center of the main interests" of a debtor company, the simple presumption laid down by the European Community legislature in favor of the registered office of that company can be rebutted only if "factors which are both objective and ascertainable by third parties enable it to be established that an actual situation exists which is different from that which locating it at that registered office is deemed to reflect." *In re Eurofood IFSC Ltd.*, 2006 WL 1142304 (E.C.J. May 2, 2006); *see also*

*SPhinX,* 351 B.R. at 118; HON. LEIF M. CLARK, ANCILLARY AND OTHER CROSS–BORDER INSOLVENCY CASES UNDER CHAPTER 15 OF THE BANKRUPTCY CODE 32 (Collier Monograph 2008). Here, the evidence at the hearing clearly established that the registered office of the Debtor Think3 Inc. is in the United States of America. Further, the evidence at the hearing established that the COMI of the Debtor Think3 Inc. is in the United States of America (not Italy) after considering factors which are both objective and ascertainable by third parties.

10.     Finally, under 11 U.S.C. §1516(c), there is a presumption in the U.S. Bankruptcy Code that a corporate debtor's COMI is the location of its registered office. Here, the evidence clearly established that the registered office of the Debtor Think3 Inc. is in the United States of America (not Italy). The Italian Trustee, as a foreign representative, did not overcome such presumption, and did not meet his burden of proof that the COMI of the Debtor Think3 Inc is in Italy. *See* 11 U.S.C. §1516(c); *Ran,* 607 F.3d at 1021.

11.     Accordingly, Italy is not the center of the main interests (COMI) of the Debtor Think3 Inc., and the Italian Proceeding is not a "foreign main proceeding" under 11 U.S.C. §1502(4).

12.     The United States of America is the center of the main interests (COMI) of the Debtor Think3 Inc.  Accordingly, the Chapter 11 Case commenced by the Debtor Think3 Inc. in this Court (case no. 11-11252-hcm), is the "main proceeding" regarding the Debtor Think3 Inc.

13.     The Italian Proceeding could possibly meet the statutory requirements for recognition of a "foreign nonmain proceeding" under the U.S. Bankruptcy Code. However, the Italian Trustee did not request recognition as a foreign nonmain

proceeding as an alternative form of relief in the Verified Petition. Moreover, the Italian Trustee filed a Notice of Withdrawal of the Verified Petition including sworn declarations in support, and the Italian Trustee provided insufficient competent evidence at the hearing to support a determination that the Italian Proceeding is a "foreign nonmain proceeding" under 11 U.S.C. §1502(5). *See also Basis Alpha,* 381 B.R. at 37, 42-47.

14.    Given the Italian Trustee's attempt to withdraw the Verified Petition and his statement that he is no longer interested in seeking relief from this Court, the continuation of this Chapter 15 Case would serve no further purpose.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED AS FOLLOWS:**

1.    The Italian Trustee's Verified Petition for Recognition of Foreign Main Proceeding and Request for Chapter 15 Relief (dkt no. 1) is DENIED on the merits;

2.    The Italian Trustee is not recognized as a foreign representative of either a foreign main proceeding or a foreign nonmain proceeding;

3.    The Italian Proceeding is not recognized as either a foreign main proceeding or a foreign nonmain proceeding;

4.    The Chapter 11 Case commenced by the Debtor Think3 Inc. in this Court (case no. 11-11252-hcm), is the "main proceeding" regarding the Debtor Think3 Inc.;

5.    Rebecca A. Roof, as the independent and court-approved President and Chief Restructuring Officer ("CRO") of the Debtor, has full authority to administer the assets and affairs of the Debtor Think3 Inc.; and

6.    This Chapter 15 Case no. 11-11925 is hereby DISMISSED.

###